1
2
3
4
5
6          IN THE UNITED STATES DISTRICT COURT
7
8          FOR THE NORTHERN DISTRICT OF CALIFORNIA
9
10
BEVERLY JOHN, JACQUELINE JOHN, LYANN
11   WILLIAMS and her minor children, and CURTIS
WILLIAMS,                                          No. C 18-06935 WHA
12
                Plaintiff,
13
       v.
14                                                 **ORDER DENYING IN
LAKE COUNTY AKA COUNTY OF LAKE; CITY               PART AND GRANTING
15   OF LAKEPORT, a municipal corporation; ANTONIO  IN PART DEFENDANTS'
J. CASTELLANOS, individually and in his capacity as MOTION TO DISMISS
16   Lake County Sheriff's Department deputy; CODY
WHITE, JOSEPH EASTHAM, and MARK STEELE,
17   individually and in their capacity as Lakeport Police
Department officers; and DOES 1 through 10,
18
                Defendant.
19                                              /
20                         **INTRODUCTION**
21         In this civil rights action, defendants move to dismiss the complaint pursuant to
22   Rule 12(b)(6) and move for a more definite statement pursuant to Rule 12(e).  For the following
23   reasons, defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART** and
24   defendants' motion for a more definite statement is **DENIED**.
25                          **STATEMENT**
26         This action stems from two law enforcement searches in November and December 2017
27   at the homes of the John and Williams family.  At age eighty, plaintiff Beverly John lived with
28   her daughter, plaintiff Jacqueline John.  In an adjacent house, Beverly's daughter-in-law,

plaintiff Lyann Williams, lived with her husband Mario Williams, who is now deceased, and her four minor children.[*] All belonged to the Big Valley Band of Pomo Indians with homes on the Big Valley Rancheria reservation in Lake County. In both incidents, defendant peace officers searched for Lindsay Williams, the adult son of plaintiff Lyann Williams, who was on probation (Compl. ¶¶ 1–3, 11–13, 15, 26).

The November 2017 incident occurred before sunrise at the home of plaintiffs Beverly and Jacqueline John. Both were asleep when defendants, Deputies Antonio J. Castellanos and Cody White of the Lake County Sheriff's Department and at least one unknown male deputy or officer, arrived and pounded on the front door. The deputies allegedly ignored repeated requests to identify themselves and stated that they did not need a warrant as they were looking for Lindsay Williams pursuant to a routine probation search. When plaintiff Beverly John cracked open the door to communicate that Lindsay did not live there and that the officers could not enter, Deputies Castellanos and White forcefully pushed open the door, causing her to fall and injure her hip.

The officers then stepped over Beverly and proceeded to search the entire house. During the search, Deputies Castellanos and White allegedly refused to let Beverly and Jacqueline put their two dogs in the bathroom where they could be contained. They threatened to shoot one of the dogs. After the deputies completed their search, Beverly had to be driven to urgent care and had x-rays taken. While Beverly remained in urgent care, one or more of the deputies allegedly misrepresented to Lake County Animal Control that one of the dogs had bitten Deputy White, so it was seized and placed in quarantine for several days until Beverly paid to release her dog. Deputies Castellanos and White allegedly found no trace of Lindsay, his possessions, or any evidence that he resided in the home (Compl. ¶¶ 15–24).

The December 2017 incident occurred at the house of plaintiff Lyann Williams. At that time Lyann's husband, Mario Williams, who was suffering from pancreatic cancer, was still alive and living at the house. Also present at the house was Lyann, her four minor children, and

---

[*] Defendants correctly assert that minor plaintiffs cannot be identified as only "her minor children." Pursuant to FRCP 5.2(a)(3), plaintiffs must identify minor plaintiffs with their initials in future submissions.

1  plaintiff Curtis Williams, Lyann's adult son who was visiting.  The Williams family was

2  watching a movie in their living room when defendants, Deputy Castellanos, Lakeport Police

3  Department officers Joseph Eastham and Mark Steele, and other unknown officers, arrived and

4  knocked on the front door.

5        Deputy Castellanos and Officers Eastham and Steele allegedly refused to identify

6  themselves and stated that they had received an anonymous tip that Lindsay Williams was

7  inside the home.  Lyann and Mario told the peace officers that Lindsay was not there and

8  informed the officers they could not enter the home without a warrant.  Despite their protests,

9  Deputy Castellanos and a second officer allegedly pushed and forced the door open.

10  The officers proceeded to search the entire house.  During their search, the officers came to

11  a locked door.  When Mario Williams refused to unlock the door, Deputy Castellanos kicked

12  in the bottom half of the door and used his shoulder to break the door in half.  Officer Steele

13  later yelled at the Williams family to leave the room that was broken into and drew his gun

14  aggressively at the entire family as they were exiting.  No trace of Lindsay, his possessions,

15  or any evidence that he resided in the home surfaced during the December incident (Compl.

16  ¶¶ 25–37).

17        Plaintiffs allege unlawful search, invasion of privacy, and excessive force under

18  42 U.S.C. § 1983, violation of California Constitution Article 1, Section 1 and Section 13,

19  violation of California Civil Code § 52.1 (the Bane Act), battery, assault, intentional infliction of

20  emotional distress, negligent infliction of emotional distress, and negligence.  Defendants City

21  of Lakeport, Officer Eastham, and Officer Steele have not moved to dismiss the claims against

22  them, while defendants Lake County, Deputy Castellanos, and Deputy White have moved to

23  dismiss all claims against them under Rule 12(b)(6) and move for a more definite statement

24  under Rule 12(e).  Subsequent briefing has eliminated one claim as plaintiffs abandoned their

25  claim for invasion of privacy under Section 1983.

26  **ANALYSIS**

27        To survive a motion to dismiss, a complaint must plead "enough facts to state a claim

28  to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

3

**United States District Court**
For the Northern District of California

1   A claim has facial plausibility when the party asserting it pleads factual content that allows the

2   court to draw the reasonable interference that the defendant is liable for the misconduct alleged.

3   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The district court accepts well-pled factual

4   allegations in the complaint as true and construes the pleadings in the light most favorable to

5   the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31

6   (9th Cir. 2008).

7           **1.      SECTION 1983 CLAIMS.**

8           Plaintiffs' first three claims for unreasonable search, invasion of privacy, and excessive

9   force are brought under Section 1983, which provides a "mechanism for vindicating federal

10  statutory or constitutional rights." *Stillwell v. City of Williams*, 831 F.3d 1234, 1240 (9th Cir.

11  2016).  To state a Section 1983 claim, plaintiffs must show "(1) that a person acting under color

12  of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of

13  some right, privilege, or immunity protected by the Constitution or laws of the United States."

14  *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988).

15          As previously discussed, plaintiffs' counsel has abandoned the second claim for invasion

16  of privacy; thus, only the claims for unreasonable search and excessive force remain.  Plaintiffs

17  have alleged Section 1983 violations against the individual peace officers as well as the

18  municipalities that employ them.  Municipalities, however, cannot be held liable under

19  Section 1983 on a theory of *respondent superior* and can only be held liable for Section 1983

20  violations in narrow circumstances. *Monell v. Department of Social Services*, 436 U.S. 658,

21  691 (1978).  Therefore, the Section 1983 claims for the individual officers and the *Monell* claims

22  for municipalities will be analyzed separately.

23                  **A.      Deputies Castellanos and White**.

24                          *(1)      Unreasonable Search Claim.*

25          Plaintiffs' first claim alleges that the defendants, under color of state law, violated

26  plaintiffs' Fourth Amendment right to be secure in their homes against unreasonable searches.

27  Accepting the well-pled allegations as true, the complaint sufficiently pled that Deputies

28  Castellanos and White forced open the door to Beverly John's house without a warrant during

4

the November incident, despite the protests of Beverly and Jacqueline John, and completed a search of every room in the house. Furthermore, plaintiffs have sufficiently pled that Deputies Castellanos similarly forced open the door in the December incident, without a warrant, and completed a search of the Williams house (Compl. ¶¶ 15–16, 25–27).

Defendants do not dispute the lack of a warrant, but attack plaintiffs' method of pleading for failing to set forth facts as to Deputy Castellanos and Deputy White's specific roles in the search. The description of the November incident, however, alleges that Deputies Castellanos and White and another unknown officer all "brutally" pushed open the door despite explicit requests not to enter and the lack of a warrant. The officers all participated in the unreasonable search (Compl. ¶ 16). Defendants ask for too much in expecting plaintiffs to know exactly what each officer did in the searches. Plaintiffs have adequately pled what occurred during the November and December incidents, and discovery will fill in the remaining details regarding the actions of each participant. The motion to dismiss the Section 1983 claim for unreasonable search against Deputies Castellanos and White with regard to the November search is **DENIED**.

With respect to the December search, however, plaintiffs never even pled that Deputy White was present. While the complaint sufficiently pleads that Deputy Castellanos participated in an unreasonable search in the December incident, the complaint is silent as to Deputy White. Thus, the motion to dismiss the Section 1983 claim for unreasonable search against Deputy White with regard to the December search is **GRANTED**.

### *(2)* *Excessive Force Claim.*

Plaintiffs' third claim alleges that defendants, under color of state law, used excessive force in conducting the unreasonable search. Peace officers violate the Fourth Amendment if they use more force than is objectively reasonable under the circumstances. *LaLonde v. County of Riverside*, 204 F.3d 947, 959 (9th Cir. 2000). Determining whether force used in making an arrest is excessive "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

5

1    Here, plaintiffs have again pled specific facts that plausibly support a claim of excessive

2    force. For the November incident, plaintiffs allege that Deputies Castellanos and White pushed

3    open the door held by an elderly woman, thrusting her to the floor, and stepped over her without

4    rendering aid. For the December incident, plaintiffs have sufficiently pled that Deputy

5    Castellanos again helped force entry into the house then unreasonably destroyed an internal door

6    of the house.

7    In their motion to dismiss, defendants only focus on Deputy White and his lack of

8    participation in the December incident. As in the unreasonable search claim, defendants are

9    correct that the complaint is silent as to Deputy White's participation in the December incident.

10   Thus, for the December search, the motion to dismiss the excessive force claim against Deputy

11   White is **GRANTED**. For the November search, the motion to dismiss with regard to Deputy

12   White is **DENIED**. As to Deputy Castellanos, the motion to dismiss with regard to both the

13   November and December searches is **DENIED**.

### B.    Lake County.

15   Municipalities can only be held liable for Section 1983 violations in narrow

16   circumstances. Our court of appeals has identified three viable theories for municipal liability

17   under Section 1983:

18   > *First*, a local government may be held liable when
>    implementation of its official policies or established customs
19   > inflicts the constitutional injury. . . . *Second*, under certain
>    circumstances, a local government may be held liable under
20   > Section 1983 for acts of "omission," when such omissions amount
>    to the local government's own official policy. . . . *Third*, a local
21   > government may be held liable under Section 1983 when the
>    individual who committed the constitutional tort was an official
22   > with final policymaking authority or such an official ratified a
>    subordinate's unconstitutional decision or action and the basis for
23   > it.

24   *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249–50 (9th Cir. 2010).

25   Under the first theory, Lake County could be found liable if there was an official

26   policy or custom that was behind the unreasonable search or use of excessive force.

27   Plaintiffs, however, have to specify the official policy or specify a custom that is "so persistent

28   and widespread that it constitutes a permanent and well settled . . . policy." *Trevino v. Gates*,

6

1   99 F.3d 911, 918 (9th Cir. 1996) (internal quotations omitted) (quoting *Monell*, 436 U.S. at

2   691).  Further, plaintiffs "must also demonstrate that the custom or policy was adhered with

3   'deliberate indifference' to [their] constitutional rights" *Castro v. County of Los Angeles*,

4   833 F.3d 1060, 1076 (9th Cir. 2016).

5       Under the second theory, Lake County could be found liable if its omission, a failure

6   to adequately train its deputies, amounts to "deliberate indifference to a constitutional right."

7   *Clouthier*, 591 F.3d at 1249.  To satisfy the deliberate indifference standard, the need for

8   training must be "so obvious, and the inadequacy so likely to result in the violation of

9   constitutional rights that the policymakers of the city can be reasonably be said to have been

10  deliberately indifferent to the need." *City of Canton v. Harris,* 489 U.S. 378, 390 (1989).

11      The complaint has failed to reach the heightened deliberate indifference standard as it

12  fails to point out any official policies or specify a widespread custom.  When the complaint

13  does allege certain customs, they are inconsistent.  For example, the complaint alleges that there

14  is a bias against the Williams and John family that has persisted in local law enforcement for

15  nearly four decades.  Later, the complaint alleges a pervasive custom of "violating the

16  constitutional rights of non-consenting non-probationers."  Further, the complaint fails to

17  differentiate Lake County from the City of Lakeport and fails to plead, beyond legal

18  conclusions, how each municipality has been deliberately indifferent to violations of

19  constitutional rights (Compl. ¶¶ 38–40, 45–50, 57–64).

20      The complaint similarly fails to satisfy the heightened deliberate indifference standard

21  when pleading under the second prong for lack of training.  Besides providing legal conclusions

22  that the defendant officers were inadequately trained, the complaint fail to allege any facts

23  establishing that the lack of training was so obvious that the policymaker could be reasonably

24  said to have been deliberately indifferent.  The complaint also fails to specify how the lack of

25  training relates to the individual claims for unreasonable search or excessive force (Compl.

26  ¶¶ 47–50, 61–64).  Therefore, the motion to dismiss the unreasonable search and excessive

27  force *Monell* claims against Lake County is **GRANTED WITH LEAVE TO AMEND**.

28

7

1      **2.      BANE ACT CLAIM.**

2          The Tom Bane Civil Rights Act, California Civil Code § 52.1, "protects individuals

3      from conduct aimed at interfering with rights that are secured by federal or state law, where

4      the interference is carried out 'by threats, intimidation or coercion.'" *Reese v. County of*

5      *Sacramento*, 888 F.3d 1030, 1040–41 (9th Cir. 2018). When claims under the Bane Act are

6      brought against public officials, qualified immunity is not available for those claims.

7      Claims for excessive force under the Bane Act do not require threat, intimidation, or coercion

8      independent of the alleged constitutional violation, but do require a "specific intent to violate

9      the arrestee's right to freedom from unreasonable seizure." *Id.* at 1043.

10         The plaintiffs here have adequately pled a claim under the Bane Action by describing

11     the basis for violations of the Fourth Amendment through threats of violence. Plaintiffs have

12     adequately pled that defendant officers searched their homes without a warrant or probable

13     cause, threatened violence, and alleged that it was done willfully and maliciously. Federal Rule

14     of Civil Procedure 9(b) allows plaintiffs at this stage to generally plead intent, knowledge, and

15     other conditions of a person's mind.

16         Defendants contend that the complaint failed to allege specific intent for each officer

17     individually. Plaintiffs, however, have "adequately stated a cause of action under [S]ection

18     52.1 where they alleged warrantless, unconsented searches, and unlawful detention." *Reese*,

19     888 F.3d at 1044 (quoting *Venegas v. County of Los Angeles*, 32 Cal.4th 820 (Cal. 2004).

20     Plaintiffs have done so here in describing the November and December incidents, which were

21     incorporated into the claim. Thus, defendants' motion to dismiss the Bane Act claim is

22     **DENIED**.

23         **3.      TORT CLAIMS.**

24         Plaintiffs allege tort claims of battery, assault, intentional infliction of emotional

25     distress, negligent infliction of emotion distress, and negligence against the individual peace

26     officers and the municipalities.

27         Before discussing the individual claims, immunity must be addressed. Defendant Lake

28     County asserts that it is immune from all common law claims under Section 815 of the

8

1  California Government Code, which provides immunity for public entities except as otherwise

2  provided by statue.  Plaintiffs correctly point to Section 815.2, which provides an exception:

3                                  "a public entity is liable for injury proximately caused by an act
                                or omission of an employee of the public entity *within the scope*

4                                  *of his employment* if the act or omission would, apart from this
                                section, have given rise to a cause of action against that employee

5                                  or his personal representative."

6  California Government Code § 815.2 (emphasis added).  Our appeals court has stated that

7  Section 815.2 "clearly allows for vicarious liability of a public entity when one of its police

8  officers uses excessive force in making an arrest."  *Blankenhorn v. City of Orange*, 485 F.3d

9  463, 488 (9th Cir. 2007).  Defendants do not dispute that the alleged violations took place

10  during the scope of employment.  Therefore, Lake County is not immune from liability under

11  Section 815.2, at least on this record.

12                        **A.**       **Battery and Assault Claims.**

13         Plaintiff Beverly John alleges battery against Deputy Castellanos, Deputy White, and

14  Lake County.  Plaintiffs Beverly John, Lyann Williams, and Curtis Williams allege assault

15  against all defendants.

16         Defendants do not dispute the battery claim, except to assert that plaintiffs failed to

17  specify which deputy individually forced opened the door.  This is a ridiculous line of

18  argument.  Defense counsel cannot possibly think it is fair to expect the occupants to know

19  each deputy's actions on the other side of the door.  Rule 12 does not require the impossible.

20  Thus, the motion to dismiss with respect to the claim for battery is **DENIED**.

21         Similarly, defendants do not dispute the assault claim with regard to the November

22  incident.  However, defendants are correct that Deputy White was not present during the

23  December incident, so the motion to dismiss the assault claims from Lyann and Curtis Williams

24  against Deputy White are **GRANTED**.

25                        **B.**       **Intentional Infliction of Emotional Distress Claim.**

26         All plaintiffs allege intentional infliction of emotional distress against all defendants.

27  "The elements of the tort of intentional infliction of emotional distress are:  (1) extreme and

28  outrageous conduct by the defendant with the intention of causing, or reckless disregard of the

9

1  probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme

2  emotional distress; and (3) actual and proximate causation of the emotional distress by the

3  defendants' outrageous conduct." *Christensen v. Superior Court*, 54 Cal.3d 868, 903 (1991).

4          Here, the complaint contains only legal conclusions that the "Officer Defendants'

5  conduct alleged herein was extreme and outrageous" without specifying any specific conduct

6  (Compl. ¶¶ 98–102). As this claim again pertains to all plaintiffs and all defendants, this

7  conclusory style of pleading makes it impossible to identify what specific conduct was extreme

8  and outrageous and which defendants were responsible. For example, the complaint alleges

9  that two of the minor children sought counseling, which could not be traced back to Deputy

10 White who was absent during the December incident (Compl. ¶ 101). The complaint fails to

11 specify what conduct from each of the officers was extreme and outrageous and how that

12 caused a plaintiff's suffering or extreme emotional distress. Thus, the motion to dismiss the

13 claim for intentional infliction of emotional distress is **GRANTED WITH LEAVE TO AMEND**.

14                    **C.      Negligent Infliction of Emotional Distress and Negligence Claims.**

15         All plaintiffs allege negligent infliction of emotional distress and negligence against all

16 defendants. As an initial matter, there is no independent tort of negligent infliction of

17 emotional distress under California law. *See Delfino v. Agilent Technologies, Inc.,*

18 145 Cal.App. 4th 790, 818 (2006). Thus, the claim for negligent infliction of emotional distress

19 will be considered together with the general negligence claim, and the motion to dismiss the

20 claim for negligent infliction of emotional distress is **GRANTED**. Further, as in previous claims,

21 Deputy White did not participate in the December search, so the motion to dismiss claims of

22 negligence against him for that search are **GRANTED**.

23         To state a claim for negligence, plaintiffs must establish the traditional elements of duty,

24 breach of duty, causation, and damages. *Marlene F. v. Affiliated Psychiatric Med. Clinic. Inc.,*

25 48 Cal.3d 583 (1989). Plaintiffs have failed to do so here. Plaintiffs alleged that the deputies

26 have a "special relationship" with their citizens that imposes an affirmative duty to take

27 reasonable steps to protect its citizens from reasonably foreseeable risks of harm (Compl.

28 ¶ 104). Plaintiffs, however, have failed to provide sufficient facts to support such a special

10

1  relationship.  When notified of this deficiency, plaintiffs, in their opposition, modified their

2  claim and cited a duty to act reasonably when using force (Opp. 22–23).  Although defendants

3  cede that "had [p]laintiffs limited the claim to a duty to not use excessive force, [d]efendants

4  may not have moved to dismiss," plaintiffs nonetheless failed to allege the requisite duty in the

5  complaint (Reply Br. 6).  Thus, the motion to dismiss the negligence claim is **GRANTED WITH**

6  **LEAVE TO AMEND**.

7        **4.**      **CALIFORNIA CONSTITUTION CLAIMS.**

8        Plaintiffs allege violations of the California Constitution, Article 1, Section 13 for

9  unreasonable search and Article 1, Section 1 for invasion of privacy.  At the heart of both

10  of these claims are important, undecided issues of California constitutional law.

11        For the Section 13 claim for unreasonable search, the central dispute revolves around

12  whether Section 13 provides for a private cause of action for damages.  The California Supreme

13  Court has not decided this issue.  In *Katzberg v. Regents of University of California,* 29 Cal.4th

14  300 (2002), the California Supreme Court, in finding that a private cause of action for damages

15  did not exist for Article 1, Section 7, provided the following framework for analyzing the

16  general question:

17        First, we shall inquire whether there is evidence from which we
   may find or infer, within the constitutional provision at issue, an

18  affirmative intent either to authorize or to withhold a damages
   action to remedy a violation.  In undertaking this inquiry we shall

19  consider the language and history of the constitutional provision
   at issue, including whether it contains guidelines, mechanisms, or

20  procedures implying a monetary remedy, as well as any pertinent
   common law history.  If we find any such intent, we shall give it

21  effect.

22        Second, if no affirmative intent either to authorize or to withhold
   a damages remedy is found, we shall undertake the "constitutional

23  tort" analysis adopted by *Bivens* and its progeny.  Among the
   relevant factors in this analysis are whether an adequate remedy

24  exists, the extent to which a constitutional tort action would
   change established tort law, and the nature and significance of the

25  constitutional provision.  If we find that these factors militate
   against recognizing the constitutional tort, our inquiry ends.  If,

26  however, we find that these factors favor recognizing a
   constitutional tort, we also shall consider the existence of any

27  special factors counseling hesitation in recognizing a damages
   action, including deference to legislative judgment, avoidance of

28  adverse policy consequences, considerations of government fiscal

11

policy, practical issues of proof, and the competence of courts to assess particular types of damages.

*Katzberg,* 29 Cal.4th at 317. In the absence of a binding California Supreme Court decision, district courts must "predict how the California Supreme Court would decide the issue." *Astaire v. Best Film & Video Corp.*, 116 F.3d 1297, 1300 (9th Cir. 1997). Yet, various federal district courts in our circuit have faced this very same issue, applied the *Katzberg* framework, and reached contradictory conclusions. *Compare Wigfall v. City and County of San Francisco,* 2007 WL 174434 (N.D. Cal. 2007) (Judge Vaughn Walker)*, with Millender v. County of Los Angeles,* 2007 WL 7589200 (C.D. Cal. 2007) (Judge Dean Pregerson) *rev'd in part*, 472 F. App'x 627 (9th Cir. 2012).

Similarly, for the Section 1 invasion of privacy claim, there are two unresolved California constitutional law issues at the center of the claim. The first dispute involves the definition of "privacy" in Section 1 and whether it encompasses the right to be free from unreasonable searches and seizures as protected by the Fourth Amendment and its analogue in the California Constitution, Article 1, Section 13. A California Supreme Court decision, *Hill v. National Collegiate Athletic Association,* 7 Cal.4th 1 (1994), analyzed the common law and constitutional sources of the right to privacy to characterize the privacy interest in Section 1. *Hill*, nor any other case, however, is squarely on point. The second dispute centers around whether Section 1, as with Section 13, provides for a private cause of action for damages, requiring an application of the *Katzberg* framework.

Since this action is going forward, this order does not finally resolve these important issues of California constitutional law. Resolution of these issues will be made, if need be, on a complete evidentiary record. Thus, the motion to dismiss both claims for violation of the California Constitution is **DENIED**.

### 5. MOTION FOR MORE DEFINITE STATEMENT.

Federal Rule of Civil Procedure 12(e) states that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement." Judges "may in [their] discretion, in response to a motion for a more definite statement under Federal Rules

of Civil Procedure 12(e), require such detail as may be appropriate in the particular case, and may dismiss the complaint if [the] order is violated." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996).

While the complaint was vague or ambiguous in parts, those concerns have been addressed above and the complaint still reasonably provided defendant with a sufficient basis to frame the responsive pleadings. Thus, the motion for a more definite statement is **DENIED**.

**CONCLUSION**

In conclusion, defendants' motion for a more definite statement is **DENIED**. Defendants Castellanos, White, and Lake County's motion to dismiss:

> 1.      All claims against Deputy White from Curtis Williams, Lyann Williams, and her four minor children for the December search is **GRANTED**.
>
> 2.      Both Section 1983 claims for unreasonable search and excessive force is **DENIED** for both deputies for the November search. The same motion is **GRANTED WITH LEAVE TO AMEND** for Lake County.
>
> 3.      The Bane Act claim is **DENIED**.
>
> 4.      The battery claim and the assault claim is **DENIED**.
>
> 5.      The intentional infliction of emotional distress claim is **GRANTED WITH LEAVE TO AMEND.**
>
> 6.      The negligent infliction of emotional distress claim is **GRANTED**.
>
> 7.      The negligence claim is **GRANTED WITH LEAVE TO AMEND**.
>
> 8.      The claims for violations of the California Constitution is **DENIED**.

By **NOON ON MARCH 8, 2019**, plaintiff may seek leave to amend the dismissed claims by a motion noticed on the normal 35-day calendar. Plaintiffs must plead their best case. Their motion should affirmatively demonstrate how the proposed amended complaint corrects the deficiencies identified in this order, as well as any other deficiencies raised in the

13

1  defendants' motion but not addressed herein.  The motion should be accompanied by a redlined

2  copy of the amended complaint.

3

4  **IT IS SO ORDERED.**

5

6  Dated:  February 22, 2019.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28