1   ANGELA L. DUNNING (SBN 212047)
    (adunning@cooley.com)
2   KRISTINE A. FORDERER (SBN 278745)
    (kforderer@cooley.com)
3   JESSIE SIMPSON LAGOY (SBN 305257)
    (jsimpsonlagoy@cooley.com)
4   COOLEY LLP
    3175 Hanover Street
5   Palo Alto, California  94304
    Telephone:  (650) 843-5000
6   Facsimile:   (650) 849-7400
7
8   *Attorneys for Plaintiffs*

9

10              **UNITED STATES DISTRICT COURT**

11              **NORTHERN DISTRICT OF CALIFORNIA**

                **SAN FRANCISCO DIVISION**
12

13  BEVERLY JOHN *et al.*,                      Case No.  3:18-cv-06935-WHA

14              Plaintiffs,                     **PLAINTIFFS' MOTION FOR SANCTIONS
                                                AND ADVERSE INFERENCE JURY
15       v.                                     INSTRUCTION**

16  LAKE COUNTY AKA COUNTY OF LAKE
    *et al.*,                                   Judge:        Honorable Sallie Kim
17
                Defendants.                     Trial Date:   Postponed
18                                              Action filed:  November 15, 2018

19

20

21

22

23

24

25

26

27

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ........................................................... 1

STATEMENT OF RELIEF SOUGHT ........................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................... 1

I.     INTRODUCTION ............................................................................... 1

II.    STATEMENT OF FACTS .................................................................... 2

    A.     Relevant Procedural Background ................................................ 2

    B.     Defense Counsel Failed To Implement Any Legal Hold........................... 4

    C.     Defense Counsel and Defendants Falsely Represented That They Had Searched For and Found No Responsive Text Messages ........................... 5

    D.     Plaintiffs Learn of Responsive, Unproduced Documents Only After Counsel Is Compelled To Produce Responsive Text Messages ........................... 7

    E.     Defendants Admit To Having Deleted Text Messages and Emails........................... 8

    F.     Defense Counsel Failed To Conduct Adequate Searches for Responsive Emails, Causing Unnecessary Delay and Needlessly Increasing the Cost of Litigation........................... 10

    G.     Defendants' Emails and Text Messages Are Not Recoverable ........................... 12

III.   LEGAL STANDARD ........................................................................... 13

IV.    ARGUMENT ...................................................................................... 13

    A.     The Court Should Order Sanctions Pursuant to Its Inherent Authority ................... 13

        1.     Defendants Had an Obligation to Preserve Documents as of May 2018....... 14

        2.     Defendants Destroyed Documents With a Culpable State of Mind ............. 14

        3.     The Deleted Evidence Was Relevant to Plaintiffs' Claims ......................... 16

        4.     An Adverse Inference Sanction Is Warranted ............................... 17

    B.     The Court Should Order Sanctions Pursuant to Rule 37(e)...................................... 19

        1.     Defendants Spoliated Evidence in Contravention of Rule 37(e).................. 19

        2.     Plaintiffs Have Been Prejudiced and Are Entitled to Monetary Damages........................... 20

        3.     Defendants Acted With Culpable Intent, Warranting an Adverse Inference Instruction ........................... 21

    C.     The Court Should Order Sanctions Pursuant to Rule 26(g)...................................... 22

        1.     Counsel Failed to Comply with Basic Discovery Obligations ..................... 22

        2.     Monetary Sanctions Are Warranted................................................. 25

V.     CONCLUSION.................................................................................... 25

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
   888 F. Supp. 2d 976 (N.D. Cal. 2012) ............................................................... *passim*

*Blumenthal Distrib., Inc. v. Herman Miller, Inc.*,
   2016 WL 6609208 (C.D. Cal. July 12, 2016) ........................................................18, 20

*Carillo v. Schneider Logistics, Inc.*,
   2012 WL 4791614 (C.D. Cal. Oct. 5, 2012).....................................................23, 24, 25

*Colonies Partners, L.P. v. Cty. of San Bernardino*,
   2020 WL 1496444 (C.D. Cal. Feb. 27, 2020)................................................................21

*Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*,
   2009 WL 1949124 (N.D. Cal. July 2, 2009)..................................................................16

*First Financial Sec., Inc. v. Freedom Equity Grp., LLC*,
   2016 WL 5870218 (N.D. Cal. Oct. 7, 2016)......................................................... *passim*

*Hugler v. Southwest Fuel Mgmt., Inc.*,
   2017 WL 8941163 (C.D. Cal. May 2, 2017) ................................................................20

*Kearney v. Foley & Lardner, LLP*,
   590 F.3d 638 (9th Cir. 2009) .......................................................................................13

*Leon v. IDX Sys. Corp.*,
   464 F.3d 951 (9th Cir. 2006.) ..................................................................13, 16, 17, 18

*Logtale, Ltd. v. IKOR, Inc.*,
   2013 WL 3967750 (N.D. Cal. July 31, 2013)........................................................13, 23

*Matthew Enter., Inc. v. Chrysler Grp. LLC*,
   2016 WL 2957133 (N.D. Cal. May 23, 2016) ..............................................................20

*In re Napster, Inc. Copyright Litig.*,
   462 F. Supp. 2d 1060 (N.D. Cal. 2006) ....................................................14, 15, 16, 20

*Nat'l Ass'n of Radiation Survivors v. Turnage*,
   115 F.R.D. 543 (N.D. Cal. 1987)..................................................................................16

*Olney v. Job.com*,
   2014 WL 5430350 (E.D. Cal. Oct. 24, 2014) ..............................................................15

*Porter v. City & Cty. of San Francisco*,
   2018 WL 4215602 (N.D. Cal. Sept. 5, 2018) ..................................................14, 19, 21

**TABLE OF CONTENTS**
(continued)

**Page**

*Rodman v. Safeway Inc.*,
  2016 WL 5791210 (N.D. Cal. Oct. 4, 2016), *as amended* (Oct. 6, 2016) ........................22, 23, 25

*Stevenson v. City and Cty. of San Francisco*,
  2015 WL 6177363 (N.D. Cal. Oct. 21, 2015)................................................................................14

*Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*,
  982 F.2d 363 (9th Cir. 1992) .......................................................................................................13

*Wingnut Films, Ltd. v. Katja Motion Pictures Corp.*,
  2007 WL 2758571 (C.D. Cal. Sept. 18, 2007) ...............................................................23, 24, 25

**Other Authorities**

42 U.S.C. § 1983.......................................................................................................................3, 4

California Civil Code § 52.1 (Bane Act) ...........................................................................................3

Federal Rules of Civil Procedure
  Rule 26 ................................................................................................................. *passim*
  Rule 37 ................................................................................................................. *passim*

**NOTICE OF MOTION AND MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that, pursuant to the Court's April 28, 2020 Order (Dkt. 143), Plaintiffs Beverly John, Jacqueline John, Curtis Williams, and Lyann Williams, individually and on behalf of her minor children, H.W., S.W., C.W., and F.W. (collectively, "Plaintiffs"), hereby move for an order pursuant to the Court's inherent authority, Rules 26(g) and 37(e) of the Federal Rules of Civil Procedure ("Rules"), and Civil Local Rule 37-4, imposing sanctions against Defendants County of Lake ("County"), Antonio J. Castellanos, Jose Martinez, and Cody White (collectively, "Deputies" or "Deputy Defendants"; together with the County, "Defendants") and their counsel, Porter Scott, for spoliating evidence.  This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declaration of Angela Dunning ("Dunning Declaration") and exhibits attached thereto, and such other written or oral argument as may be presented to the Court.

**STATEMENT OF RELIEF SOUGHT**

Plaintiffs seek an order finding that Defendants and their counsel spoliated evidence and ordering an adverse inference jury instruction to the effect that Defendants breached their obligation to preserve relevant evidence and that the jury may consider this in reaching a verdict.  As detailed in the Dunning Declaration, Plaintiffs also seek monetary sanctions as follows: (1) $87,201.98 for attorneys' fees and costs incurred in bringing earlier discovery motions relating to Defendants' failure to collect and review ESI (Dkts. 96, 114) and conducting preservation and spoliation-related depositions pursuant to Court order (Dkts. 106, 123); and (2) monetary sanctions in an amount to be determined but not less than $18,748 for attorneys' fees incurred in bringing this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

After more than a year of repeatedly expressing concern that Defendants appeared not to understand their basic preservation obligations, and after repeated assurances from defense counsel that a proper litigation hold had, indeed, been implemented, Plaintiffs learned on March 10, 2020, at the deposition of the County's IT director, that Defendants had put a litigation hold in place *only the day before*.  Plaintiffs further learned that the hold applied only to the three individual Deputies, even

Cooley LLP
Attorneys At Law
Palo Alto

1

Plaintiffs' Motion for Sanctions and
Adverse Inference Jury Instruction
Case No. 3:18-cv-06935-WHA

though Plaintiffs have a *Monell* claim against the County for failing to train its deputies, and the County, itself, has identified other key custodians who possess relevant information.

Not surprisingly in these circumstances, discoverable documents have been lost or destroyed. Deputies Castellanos and Martinez both acknowledge an understanding of their preservation obligations (albeit an incorrect, overly narrow one), yet still admitted at their depositions in February 2020 that they *intentionally deleted text messages from their cell phones about the searches at the heart of this case*. Both also admitted that they have continued their "habit" throughout the pendency of this suit of periodically deleting large batches of work emails without first reviewing for content.

Defense counsel is culpable for these failings. Counsel failed to implement a timely and proper litigation hold, failed to monitor his clients' efforts (or lack thereof) to search for relevant ESI, and failed to otherwise search for and produce responsive documents, despite repeated assurances to the contrary. As a result, Plaintiffs have been prejudiced, not only because relevant documents have been destroyed, but also because Plaintiffs have been deprived of the ability to ascertain and recover what was lost. The Court should award Plaintiffs monetary sanctions and an adverse inference instruction that allows the jury to consider Defendants' spoliation in rendering their verdict.

## II.   STATEMENT OF FACTS

### A.   Relevant Procedural Background

Plaintiffs are extended family members living in two separate adjacent homes at 1330 Soda Bay Road, Lakeport, California. (¶¶ 9–10.)[1] Plaintiffs Beverly John and her daughter, Jacqueline John, live in one home. (*Id.*) Plaintiffs Lyann Williams and her minor children and adult son, Curtis Williams, live in the other. (*Id.*) Mario Williams (Lyann's husband/Beverly's son) is now deceased. (¶ 10.) Lyann and Mario have two other adult children who are not Plaintiffs: Anthony Williams and Lindsay Williams, the probationer and subject of the unlawful searches giving rise to this action. (*Id.*)

On May 15, 2018, Beverly and Jacqueline John served on the County an administrative claim for damages in connection with an illegal search of their home on November 16, 2017 (the "November Incident"). (Ex. 1.) The claim described the date and nature of the Incident and explicitly named

---

[1] Unless otherwise stated, citations to "¶ _" are to the SAC (Dkt. 73); citations to "Ex. _" are to Exhibits to the Dunning Declaration; internal citations and quotations are omitted; and all emphasis is added.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

2.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

Deputies Castellanos and White.[2]  (*Id.*)  Lyann and Mario Williams served a similar administrative claim with the County on June 8, 2018 in connection with an illegal search of their home on December 9, 2017 (the "December Incident").  (Ex. 2.)  That claim named Deputy Castellanos.  (*Id.*)  The claims were presented to the County Board on May 17, 2018 and June 11, 2018, and were rejected.  (Ex. 3.)

Plaintiffs filed this action on November 15, 2018, naming the County, Deputies Castellanos and White, Doe Defendants, and other parties that have since settled out.[3]  (Dkt. 1.)  The County identified Jose Martinez as the third Deputy present for the November Incident in its initial disclosures (Ex. 4), and Plaintiffs formally named him as a defendant in their amended complaint, filed April 26, 2019.  (Dkt. 53.)  The operative Second Amended Complaint ("SAC") names the County and all three Deputies, and alleges claims for violation of 42 U.S.C. § 1983 and the California Constitution for unreasonable search, excessive force, and failure to train (*Monell*), violation of California Civil Code § 52.1 (Bane Act), battery and assault (by Beverly John against the Deputy Defendants in connection with the November Incident), assault (by the Williams Plaintiffs against Castellanos and others for the December Incident), intentional infliction of emotional distress, and negligence.  (Dkt. 73.)

Specifically, Plaintiffs allege that the Deputy Defendants illegally entered and searched the John home over Beverly's objection and without a search warrant on November 16, 2017, using excessive force to push open the door that octogenarian Beverly was holding, knocking her to the ground.  (¶ 2.)  Plaintiffs further allege that three weeks later, Deputy Castellanos and three other non-County officers illegally entered the Williams home over Lyann's objection without a search warrant and used excessive force during the search by violently kicking in a door, drawing and pointing a taser at the entire family (including the children), and threatening to send the entire family to jail.  (¶ 3.)

Defendants claim their actions were justified because Lindsay Williams was on probation and a warrant had issued for his arrest.  (*See* Dkt. 117.)  However, Plaintiffs strenuously dispute that the Deputies had probable cause to believe Lindsay lived with them, a prerequisite for either purported

---

[2] At the time, Plaintiffs mistakenly believed Cody White was an officer with the Lakeport Police Department and did not know the name of the third deputy present for the November Incident (Jose Martinez).  (*Id.*)  However, the County clearly knew the names of the Deputies in question, as documents produced in discovery show that it conducted internal affairs investigations into all three Deputies, including White and Martinez, in July and August 2018.  (Dunning Decl. ¶ 11.)
[3] With the help of Magistrate Judge Illman, Plaintiffs finalized a settlement with the City of Lakeport and its Officers on April 20, 2020.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

3.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

1    exception to the search warrant requirement.  Further, Plaintiffs contend that the Deputies acted with

2    bias and malice towards them, based in part on the fact that the arrest warrant the Deputies were

3    attempting to serve on Lindsay was for an alleged assault on Deputy Castellanos's own father that

4    occurred on November 3, 2017, just days before the November Incident.  (*See* Dkt. 117 at 21–22.)

5         Following the Court's orders on summary judgment (Dkt. 129) and reconsideration (Dkt. 144),

6    the key issues currently remaining to be tried are whether the County properly trained its officers

7    regarding the use of force during probation searches, whether the force used or threatened by the

8    Deputy Defendants was unreasonable in violation of state and federal law, and whether the Deputy

9    Defendants actions constituted an intentional infliction of emotional distress or negligence.[4]

10        **B.    Defense Counsel Failed To Implement *Any* Legal Hold**

11        Since the outset of this litigation, Plaintiffs have expressed concern to defense counsel, and the

12   Court, about County Defendants' failure to preserve documents.  At the parties' Rule 26 conference

13   on January 24, 2019, "Plaintiffs' counsel repeatedly inquired about the measures Defendants had taken

14   to preserve ESI, including whether Defendants had issued litigation holds. Defense counsel, Mr.

15   Whitefleet of Porter Scott, repeatedly refused to confirm or deny whether any litigation hold had been

16   implemented." (Dkt. 33 at 6.)  Mr. Whitefleet acknowledged purported awareness of his preservation

17   duties, but would not say whether he had implemented a hold.  (*Id.* at 7–8.)  Plaintiffs then raised this

18   concern at the initial CMC on February 14, 2019, and Judge Alsup instructed the parties as follows:

> Anything that relates directly to the case, like emails, text messages, voicemails,
> memos, handwritten notes, they should be preserved. And any document-destruction
> program should be interdicted in order to stop it.  *And if you fail to do that, on either*
> *side, then very likely **the jury will be told**.* . . . [Y]ou have a duty, as the lawyers, to tell
> your clients that.  So, please do so.

22   (Ex. 5 (Dkt. 134) at 18:10-19.)  Mr. Whitefleet responded, "Understood." (*Id.* at 18:20.)  Nevertheless,

23   it has subsequently become clear that Mr. Whitefleet flouted this explicit instruction.

24        First, the County's 30(b)(6) witness on document preservation, Lieutenant Luke Bingham,

25   testified at his deposition on December 3, 2019 that: (1) "the county ha[d] not received any directives

---

[4] Plaintiffs intend to appeal the dismissal of their § 1983 and other claims based on unlawful search. Absent final judgment, Defendants' preservation obligations continue to extend to those claims, including information about the Deputies' knowledge and investigation (or lack thereof) into Lindsay's residence at the time of the Incidents, and any training they received on probation searches.

Cooley LLP
Attorneys At Law
Palo Alto

4.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

to preserve emails related to this complaint" (Ex. 19 at 314:8-10); (2) the County's IT Director, Shane French, had not "done anything to extract or preserve any emails" in connection with the litigation (*id.* at 310:24-25, 315:8-14); and (3) none of the individuals he had spoken to in preparing for the topic of preservation "suggest[ed] that Defendants Castellanos, Martinez, and White were instructed to preserve emails in connection with the litigation" (*id.* at 317:18-22). (*See generally id.* at 309:12–319:2.)[5]  Indeed, Defendant Martinez testified at his deposition on August 7, 2019 that he had *never* been asked to preserve documents in connection with the litigation. (Ex. 13 at 306:24–307:2.)[6]

Second, on March 10, 2020, pursuant to Court Order (Dkt. 123), Plaintiffs deposed Mr. French, who confirmed that "the *first time* [he'd] been asked to put any sort of litigation hold on the [] e-mails belonging to Deputies Castellanos, White, and Martinez" was "[a] day ago," i.e., *March 9, 2020*—more than a year after the litigation commenced, and well after discovery had closed. (Ex. 26 at 41:18–43:6.)  Remarkably, Mr. French also testified that he had not been asked to put any sort of litigation hold on any other County employee or document repository, even though County-wide training defects are directly at issue and even though the County's own Rule 26 initial disclosures identify other, non-defendant employees in the Sheriff's and Probation Departments as relevant witnesses. (*See id.* at 43:7–44:15; Ex. 4.)  And, importantly, Mr. French confirmed that, as IT Director, he would know if any sort of litigation hold had been implemented, but none was. (Ex. 26 at 45:5-23.)

### C. Defense Counsel and Defendants Falsely Represented That They Had Searched For and Found No Responsive Text Messages

Throughout the discovery process, Plaintiffs consistently requested that Defendants conduct a thorough search of their work emails and personal cell phones for any communications related to the

---

[5] The only documents Lt. Bingham testified had been preserved were the body camera videos of the Incidents, as well as RIMS documents (law enforcement formal reports) and internal affairs reports, which are generally access-restricted. (*See id.* 316:11–317:6.)

[6] In a second deposition on February 26, 2020, Deputy Martinez testified to a new (but still incorrect) understanding of his preservation obligations, which he gained some time after his first deposition in August 2019.  He testified that he understood he was required to preserve ESI only "leading up to" or "related to the *November* 2017 incident," but had no obligation to preserve documents related to the *December* Incident or his training. (Ex. 25 at 401:23–410:2.)  Deputy Castellanos testified in February 2020 that he was informed of a duty to preserve documents at some point, but could not recall when. (Ex. 24 at 357:12–359:10.)  He understood this to mean that he had to "go back and check any emails and text messages . . . ." (*Id.* at 359:18-25.)  Despite this purported (and again, incorrect) understanding, Castellanos also testified that he "continued with [his] habit of deleting text messages" throughout the litigation. (*Id.* at 415:8–416:15 ("I wasn't destroying any evidence, it's just a habit.").)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

5.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

1   claims in this litigation.  (*See e.g.*, Ex. 6 (RFP Nos. 9–11 (seeking all documents and communications,

2   including emails and text messages, concerning the November Incident, December Incident, and

3   Lindsay Williams, respectively)); Ex. 11 (meet and confer re searching the Deputies' cell phones).)

4        Defense counsel represented on July 19, 2019 that Deputies Castellanos and White had

5   "*attempted* to do diligent searches of their phones," but they did not know how to run search terms,

6   and, in any event, "the officers did not use their phones to communicate about these incidents before,

7   during, or after it occurred."  (Ex. 11 at 3.)  By the time of this email, however, Plaintiffs were already

8   aware that Deputy Castellanos had used his cell phone at least twice in connection with the December

9   Incident.   Lakeport Police Officer Eastham had already produced a relevant text message with

10  Castellanos from the night of the December Incident (*id.* at 2; Ex. 7); and Castellanos's own body

11  camera footage from that night showed him taking a photo of Lindsay's girlfriend on his cell phone

12  (*see* Ex. 11 at 2), which has never been produced.  Plaintiffs thus asked counsel to thoroughly search

13  the Deputies' cell phones, using a vendor and search terms.  (*Id.* at 3.)

14       On July 30, 2019, defense counsel again represented that "there are no documents or

15  information responsive to the requests" on Deputy Castellanos and White's cell phones, and refused

16  to hire a third party vendor.  (*Id.* at 1.)  Defense counsel made similar representations about the cell

17  phone belonging to Deputy Martinez on September 3, 2019, in response to Plaintiffs' document

18  requests: "*Defendant has conducted a thorough search of Defendant's cell phone. No responsive*

19  *documents were found in that search*."  (Ex. 15 (Martinez responses to RFP Nos. 9, 10 & 12, seeking

20  documents regarding the November Incident, December Incident, and Lindsay Williams).)

21       In lockstep with defense counsel, each of the Deputies testified at deposition that they did not

22  text with other law enforcement about Lindsay Williams.  Martinez testified on August 7, 2019 that

23  he could not recall ever having "communicated over text message with any person about anything

24  relevant to this litigation." (Ex. 13 at 314:19-22).  White testified the next day that he had never texted

25  the other Deputies about Lindsay.  (Ex. 14 at 265:5-16.)  And Castellanos testified on November 21,

26  2019 that, apart from the one text message with Officer Eastham described above, he had never "texted

27  with anyone, law enforcement or otherwise, about Lindsay Williams." (Ex. 18 at 158:15-24).  *All of*

28  *these sworn statements were later revealed to be false*.  Castellanos also testified that he *had* provided

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

6.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

1  unspecified text messages to his counsel.  (*Id.* at 155:21-22).  Yet, by the close of fact discovery on

2  December 3, 2019, Defendants had not produced a single text message.  (Dunning Decl. ¶ 33.)

### D.  Plaintiffs Learn of Responsive, Unproduced Documents Only After Counsel Is Compelled To Produce Responsive Text Messages

5  At the December 18, 2019 hearing on Plaintiffs' motion to compel ("December Hearing"), Mr.

6  Whitefleet brought with him a text message chain ("Text Chain"), which he agreed to let the Court

7  review *in camera*.  (Dunning Decl. ¶¶ 35–36.)  Judge Alsup reviewed the text messages and ordered

8  them produced.  (*Id.*; Ex. 20 (Dkt. 106) at 50:21-22.)  On December 19, 2019, Mr. Whitefleet produced

9  the Text Chain—a series of texts between four Lake County Sheriff's Deputies, including Castellanos

10  and Martinez, discussing Lindsay Williams and the December Incident.  (Ex. 21.)  However, the

11  produced screenshots were illegible in parts and certain messages in the thread were cut off.  (*See id.*)

12  On January 9, 2020, Plaintiffs' counsel wrote to Mr. Whitefleet to request (again), among other things,

13  a complete version of the Text Chain, and a date certain by which other responsive text messages

14  would be produced.  (Ex. 22 at 5–6.)  The parties met and conferred telephonically on January 27.

15  (*See id.* at 1.)  During the call, Mr. Whitefleet agreed to search for a complete version of the Text

16  Chain, and represented (again) that the appropriate search terms had been run over the Deputy

17  Defendants' cell phones and that there were no responsive documents.  (*Id.*; Dunning Decl. ¶ 38.)

18  On January 30, Defendants produced a new version of the Text Chain from the cell phone of

19  one of the non-Defendant participants.  (Ex. 23.)  As this exchange shows, Deputy Martinez wrote on

20  March 18, 2019, "*I doubt that family would decline a search knowing their doors would get kicked*

21  *in*," and Castellanos responded, "*I would kick down another door at that house without hesitation*."

22  (*Id.* at 10309; *see also* Ex. 25 at 428:13-23 (admitting that these texts referred to the "Williams family"

23  and "December [I]ncident").)  Moreover, the Text Chain showed that Martinez had exchanged *other*

24  responsive text messages with Lindsay's parole agent, Christopher Rotondo, which were not produced.

25  (*See* Ex. 23 at 10307.)  However, when Plaintiffs asked Mr. Whitefleet during a February 5, 2020 meet

26  and confer to produce all related text messages from Martinez and Castellanos's cell phones, Mr.

27  Whitefleet said he could not do so *because they had been deleted*.  (Dunning Decl. ¶ 40.)  He also

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

7.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

confirmed that he had never imaged his clients' cell phones or personally searched them.  (*Id.*)  Rather, he relied only on the Deputies' own assurances that they had no responsive documents.  (*Id.*)

### E.  Defendants Admit To Having Deleted Text Messages and Emails

In follow up depositions related to the newly produced Text Chain, it became apparent that Deputies Castellanos and Martinez had been deleting potentially relevant text messages and emails since the outset of the litigation, and that their personal "searches" were woefully inadequate.

**Text Messages**.  Castellanos testified on February 25, 2020, in a deposition focused on the Text Chain and preservation issues, that he had never run any search for keywords using the search bar feature in his iMessages on his iPhone, and does not believe this to be possible (*it is*).  (Ex. 24 at 380:19–381:8.)  Instead, the "diligent" search defense counsel referred to back in July 2019 entailed Castellanos thinking about when he had texted about Lindsay Williams, and scrolling through his texts to find any messages he could recall.  (*Id.* at 381:9–382:3.)  Insofar as he had already testified he could not remember texting about Lindsay (Ex. 18 at 158:15-24), this was hardly an effective search strategy.  Castellanos also testified that he deleted the Text Chain from his phone sometime after it was sent in 2019, consistent with his "habit of deleting my messages . . . every couple months or so when I have a lot of -- of threads of text messages and I just go by and delete them, since I have them."  (Ex. 24 at 415:8-16, 417:2-420:18.)  He claims to have deleted the Text Chain to "make room" on his phone, because the four deputies had not talked in a while.  (*Id.* at 420:19–421:3.)  But after deleting the Text Chain, he resumed texting with the identical group.[7]  (Ex. 24 at 421:4-5.)

Deputy Martinez testified on August 7, 2019 that he had made no "effort to check or verify that [he] had no communications relevant to this litigation in [his] personal e-mail, work e-mail, or text messages."  (Ex. 13 at 314:23–315:3.)  On February 26, 2020, he testified that at some point in the past few months (he could not recall when), he entered the keywords "Soda Bay Road," "Lindsay," "Williams," "1350," "1330" and maybe "Lyann" into his phone, and found nothing.  (Ex. 25 at 395:16–396:15.)  He further testified—in a complete reversal of his August 2019 testimony—that he "had text messages on [his] phone relating to Lindsay Williams at one time," but that they were no

---

[7] Suspiciously, only Martinez and Castellanos had deleted the chain.  Deputy Newton, who is not a defendant, still had it on his phone, which is how Plaintiffs got it in the first place.  (*See* Ex. 23; Dunning Decl. ¶ 39.)

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

8.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

1  longer on his phone because he "deleted them." (*Id.* at 396:16–397:9.) Martinez claims he did not

2  hand pick text messages to delete, but like Castellanos, deleted the Text Chain "[t]o conserve space

3  on [his] phone." (*Id.* at 397:16-19, 398:3-5.) Like Castellano, he also rejoined the group text thread

4  after deleting the relevant portions. (*Id.* at 417:7-10.) And, Martinez admitted to deleting text

5  messages he exchanged with Lindsay's parole agent, Christopher Rotondo, about Lindsay and his

6  residence, as well as other related texts, *as recently as January 24, 2020.* (*Id.* at 398:16–401:20.)

7  On March 27, 2020, Defendants produced 22 pages of heavily redacted text messages

8  discussing Lindsay, pursuant to this Court's Order (Dkt. 123). (Dunning Decl. ¶ 47.) These texts

9  were revealing: 14 pages reflect communications between Deputy White and Agent Rotondo in 2019

10  and 2020 (nothing earlier); one page reflects a text from Deputy Martinez to White in January 2019

11  (contradicting White's deposition testimony in August 2019 that he never texted with the other

12  Deputies about Lindsay); one page reflects an August 6, 2019 text between Martinez and Rachel

13  Abelson (a Lake County Senior Deputy District Attorney, according to LinkedIn) about Lindsay (in

14  contravention of Martinez's sworn deposition testimony *the next day* that he had never texted about

15  anything relevant to the litigation); and four pages reflect evidence of the renewed group Text Chain

16  on Martinez's and Castellanos's phones, with texts about Lindsay from January 2020. (*Id.*)

17  **Emails**. According to the County's IT Director, Mr. French, Sheriff's deputies email accounts

18  have a "small" size limit of "2 gigabytes [] per user," including the inbox, sent items, and deleted

19  items. (Ex. 26 at 23:8-25.) When these accounts approach capacity, deputies receive an automated

20  notice that they are almost out of space, and that once they reach their limit, they will no longer be

21  able to send or receive emails. (*Id.* at 24:5-17.) The message is clear as to what a deputy should do

22  when he receives this email: "delete some stuff." (*Id.* at 25:6-17.) Though it is possible to increase

23  the size of an individual's account on request, Mr. French (who handles such requests) has never

24  received one from a Lake County Sheriff's deputy. (*Id.* at 25:19–26:16.)

25  Deputy Castellanos testified that he has a practice of deleting emails, starting at the bottom of

26  his inbox—without reading them—when he receives an alert that his inbox is full. (Ex. 24 at 362:13-

27  20, 364:12-22.) The only emails he segregates out are ones sent by his attorney. (*Id.* at 363:17-23.)

28  As of his February 25, 2020 deposition, he had purged email as recently as one month earlier, when

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

9.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

1    he received "an email saying, 'Hey, your inbox is full,'" and at least once before that, at the instruction

2    of the Undersheriff, who told the deputies to delete emails because the system was getting full.  (*Id.* at

3    365:5-19.)  Similarly, Deputy Martinez testified on February 26, 2020 that he has indiscriminately

4    deleted large groups of emails upon receiving a "mailbox full" notification.  (Ex. 25 at 436:6-12.)  He

5    has done this more than three times in the past year.  (*Id.* at 436:24–437:4.)

### F.   Defense Counsel Failed To Conduct Adequate Searches for Responsive Emails, Causing Unnecessary Delay and Needlessly Increasing the Cost of Litigation

8         In addition to failing to implement a hold, Mr. Whitefleet stonewalled Plaintiffs for months,

9    failing to respond to meet and confer emails, taking inordinate amounts of time to run search terms,

10   and offering vague and inaccurate assurances that searches were being run and documents would be

11   produced.  Specifically, Mr. Whitefleet agreed on April 4, 2019 that the County would run a series of

12   search terms to satisfy Plaintiffs' RFPs collectively, rather than continuing to debate objections to

13   individual RFPs, and Plaintiffs proposed a set of search terms on April 11, 2019.  (Dunning Decl. ¶ 16,

14   18; Ex. 8 at 8–11.)  On April 26, Mr. Whitefleet complained of technical difficulties on the County's

15   part, but nevertheless agreed to run Plaintiffs' proposed search terms for a hit count.  (Ex. 9 at 2.)

16   Receiving no response to multiple follow up emails (*see* Ex. 8 at 1), Plaintiffs' counsel met and

17   conferred with Mr. Whitefleet by phone on June 6, 2019, during which, in the spirit of compromise,

18   Plaintiffs agreed to narrow the terms.  (Dunning Decl. ¶ 22.)  Plaintiffs provided a narrowed set of 28

19   search terms to Defendants on July 16, 2019, and Defendants agreed again to run them for a hit count.

20   (*Id.*; Ex. 11 at 3; Ex. 12 at 1–2; Ex. 16 at 15.)  Between July and September 2019, Plaintiffs sent five

21   follow up emails, requesting that documents be produced before the first scheduled deposition on

22   August 7, 2019, but received only vague assurances that the searches were in process (if any response

23   at all). (Ex. 12 at 1; Ex. 16 at 14–17.)  Finally, on September 9, at which point Plaintiffs were expecting

24   a production, Defendants provided hit counts for *six* of the 28 terms.  (Ex. 16 at 13.)

25        On September 12, Plaintiffs asked Defendants to review those documents.  (*Id.* at 12.)  After

26   more follow up emails, and a meet and confer on October 4, 2019, Mr. Whitefleet provided updated

27   hit counts for 23 of the agreed upon search terms, which together hit on 2,451 emails and many more

28   files from the Sheriff's Office file server.  (*Id.* at 7–11.)  On October 7, Plaintiffs asked Defendants to

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

10.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

review *all* of the 2,451 emails and a small fraction of the files (1,295 documents), and meanwhile to run hit counts for the remaining terms that had never been run, as well as narrowed versions of certain search terms that had returned a high volume of hits.  (*Id.* at 4–7.)  Mr. Whitefleet explicitly agreed to this proposal the following day (with an edit to a single term).  (*Id.* at 3; Dunning Decl. ¶ 27e.)  On October 11, Mr. Whitefleet reported revised hit counts of "20553" emails, while the files had dropped by half, and complained again that this was too broad.  (*Id.* at 2–3.)  Noting an apparent error in the email count (which increased ten-fold without explanation and likely contained an errant "0"), Plaintiffs once again asked counsel to review the original 2,451 emails and 1,295 files while the parties continued to negotiate the scope of the other search terms.  (*Id.* at 1–2.)  Plaintiffs followed up on October 21, but Mr. Whitefleet never responded.  (*See id.* at 1.)

In a final attempt to narrow the issues on which Plaintiffs would be moving to compel, and to lessen the apparent burden on the County, Plaintiffs wrote again to Mr. Whitefleet on November 19, 2019, to try to reach a final agreement on search terms for email and text messages, and timing for the County's production.  Plaintiffs never received a response.  (Ex. 17 at 2–3.)  On November 25, 2019, Plaintiffs finally received a production of documents in the mail, which purportedly corresponded to the "agreed" search terms.  (*Id.* at 1; Dunning Decl. ¶ 28.)  Plaintiffs requested clarification as to which search terms had been used, but received no response.  (Ex. 17 at 1; Dunning Decl. ¶ 31.)  The production was 9,250 pages, but consisted of only 50 emails (19 for Castellanos; 20 for Martinez; and 16 for White)—almost all of which entailed the Sheriff sending lengthy articles and memos to his deputies on topics unrelated to the litigation.  (Dunning Decl. ¶ 31.)  Beyond this, the County produced only *one* other email before the close of fact discovery.  (*Id.* ¶ 30.)

Fact discovery closed on December 3, 2019.  On December 9, Plaintiffs timely moved to compel production of, among other things, the missing ESI (further narrowing the search terms to seven).[8]  (Dkt. 96.)  Thereafter, at the December 18 Hearing, Judge Alsup ordered the Text Chain produced, re-opened discovery until February 28, 2020 *for Plaintiffs only*, and referred all further discovery disputes to Magistrate Judge Kim.  (Dkt. 104; Ex. 20 (Dkt. 106) at 51:13–19.)  Judge Alsup

---

[8] The agreed-upon search terms narrowly targeted: (1) Beverly AND John; (2) Lyann AND Williams; (3) (Jacqueline OR Jackie) AND John; (4) Curtis AND Williams; (5) Mario AND Williams; (6) "Soda Bay" AND (Williams or John); (7) "Yellow Hammer" AND Williams.  (*See* Dkt. 96.)

Cooley LLP
Attorneys At Law
Palo Alto

11.

Plaintiffs' Motion for Sanctions and
Adverse Inference Jury Instruction
Case No. 3:18-cv-06935-WHA

1    chastised defense counsel for "stonewalling" and playing "hide the ball." (Ex. 20 (Dkt. 106) at 32:2–

2    6, 33:12–13, 51:13–19); *see also* Dunning Decl. ¶ 36.)

3          In January 2020, Mr. Whitefleet agreed to run the seven search terms from Plaintiffs' motion,

4    but there were no longer any responsive emails. (Ex. 22 at 1.) In light of the Text Chain, which made

5    clear that prior cell phone searches had been inadequate and that there may be responsive documents

6    on the Deputies' cell phones, Plaintiffs filed a joint letter brief on February 11, 2020, seeking to compel

7    production of the missing text messages and other ESI, as well as sanctions for spoliation. (Dkt. 114.)

8          Pursuant to the Court's order on the joint letter brief (Dkt. 123), Plaintiffs deposed the County's

9    IT director, Mr. French, on March 10, 2020, who exposed Mr. Whitefleet's delay tactics and willful

10   misdirection. Mr. French explained that he had conducted separate searches of the County's email

11   server (Outlook) and the Sheriff's Office file server. (Ex. 26 at 11:13-15.) Although Mr. Whitefleet

12   had represented to Plaintiffs' counsel that it had taken the County *over three months* to obtain a mere

13   hit count on Plaintiffs' search terms (*see* Dunning Decl. ¶ 27c), Mr. French testified that it took him

14   only *one month* to run the 23 search terms over the file server, and that the email searches ran in a

15   matter of *hours*. (*Id.* at 55:17–57:21.) Mr. French further testified that he had only ever sent

16   documents to Mr. Whitefleet for his review on two occasions: (1) on October 9, 2019, a file containing

17   documents from the file server (not the email server); and (2) after December 18, 2019 (i.e., *after close*

18   *of fact discovery and after the December Hearing*), a file containing emails hitting on seven search

19   terms. (*Id.* at 62:16–63:4.) In other words, Mr. Whitefleet *never reviewed the 2,451 emails*, as he had

20   agreed to do on October 8, and in fact only reviewed the files.

21         Following Mr. French's deposition, Mr. Whitefleet agreed to review emails hitting on the term

22   "Lindsay AND Williams," which Plaintiffs learned had never been reviewed, and produced 19 pages

23   of emails on March 23, 2020. (Ex. 27 at 5–6; Dunning Decl. at ¶¶ 45–46.) Sixteen of the emails are

24   from 2019, fourteen are from 2018, and none are from 2017 (the year in which the key events took

25   place). (Dunning Decl. at ¶ 46.) Castellanos does not appear to be on any of them. (*Id.*)

26         **G.    Defendants' Emails and Text Messages Are Not Recoverable**

27         According to Mr. French, once an email is deleted from a deputy's Deleted Items folder (for

28   instance if he empties his "trash" to make space on his account), it is permanently deleted after about

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

12.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

1   two weeks.  (Ex. 26 at 19:17–20:21.)  The County maintains a disaster recovery backup that saves the

2   daily contents of its email server, but that backup is retained no longer than 90 days.  (*Id.* at 31:18–

3   33:16, 117:3–18.)  Emails are not otherwise backed up.  (*Id.* at 36:4–8.)  After his deposition, Mr.

4   French searched the backup file at Plaintiffs' request and found no responsive emails.  (Ex. 27 at 6.)

5       Defendants' deleted text messages are also not recoverable.  Mr. Whitefleet did not collect text

6   messages from any of the Deputies' cell phones until ordered to do so on March 4, 2020 (Dkt. 123;

7   Ex. 24 at 382:7-11; Ex. 25 at 432:1-7), and once he finally did, Castellanos had no recoverable text

8   messages before January 2020, Martinez had no recoverable text messages before August 2019, and

9   White had no recoverable text messages before January 2019.  (Dunning Decl. ¶ 47.)  In other words,

10  all the relevant text messages from before, during, and immediately after the Incidents are lost.

11  **III.   LEGAL STANDARD**

12      Spoliation of evidence "is the destruction or significant alteration of evidence, or the failure to

13  preserve property for another's use as evidence, in pending or future litigation."  *Kearney v. Foley &*

14  *Lardner, LLP*, 590 F.3d 638, 649 (9th Cir. 2009).  The court's authority to sanction a party for

15  spoliation derives from the inherent power of federal courts to levy sanctions in response to abusive

16  litigation practices, and the availability of sanctions under Rule 37.  *Leon v. IDX Sys. Corp.*, 464 F.3d

17  951, 958 (9th Cir. 2006.)  Additionally, Rule 26(g) requires courts to sanction counsel and/or a party

18  who makes discovery certifications without conducting a "reasonable inquiry," and who misuses the

19  discovery process to "cause unnecessary delay or needlessly increase the cost of litigation."  Fed. R.

20  Civ. Proc. 26(g); *see also Logtale, Ltd. v. IKOR, Inc.*, 2013 WL 3967750 (N.D. Cal. July 31, 2013).

21  **IV.   ARGUMENT**

22      **A.   The Court Should Order Sanctions Pursuant to Its Inherent Authority**

23      "It is firmly established in the Ninth Circuit that '[a] federal trial court has the inherent

24  discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation

25  of relevant evidence,' which includes the power 'to permit a jury to draw an adverse inference from

26  the destruction or spoliation against the party or witness responsible for that behavior.'"  *Apple Inc. v.*

27  *Samsung Elecs. Co., Ltd.*, 888 F. Supp. 2d 976, 985 (N.D. Cal. 2012) (quoting *Glover v. BIC Corp.*, 6

28  F.3d 1318, 1329 (9th Cir. 1993)); *see Unigard Sec. Ins. Co. v. Lakewood Eng'g & Mfg. Corp.*, 982

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

13.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

F.2d 363, 368 (9th Cir. 1992) (upholding exclusionary sanction for spoliation pursuant to the Court's "broad discretion to make discovery and evidentiary rulings conducive to the conduct of a fair and orderly trial").  Courts in the Ninth Circuit regularly rely on this inherent power to issue adverse inference jury instructions as a sanction for spoliation.  *Apple*, 888 F. Supp. 2d at 985–96 (collecting cases).  An adverse inference instruction may be imposed where three elements are met: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense."  *Id.* at 989–90, 996–97.  All three prongs are satisfied here.

### 1.    Defendants Had an Obligation to Preserve Documents as of May 2018

Defendants' preservation obligation arose in May 2018, when Plaintiffs served the first of two administrative complaints on the County in connection with this case.  (*See* Ex. 1.)  "As soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action."  *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006); *see Porter v. City & Cty. of San Francisco*, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018) (duty to preserve arose when plaintiff served administrative claim under California Government Code).  Certainly, defense counsel should have implemented a hold no later than November 2018, when the lawsuit was filed.  *Stevenson v. City and Cty. of San Francisco*, 2015 WL 6177363, at *4 (N.D. Cal. Oct. 21, 2015) ("The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation—most commonly when suit has already been filed.").  Mr. Whitefleet even acknowledged this specific obligation in February 2019, when the Court admonished him that sanctions would flow if he failed to meet it.  (Ex. 5 (Dkt. 134) at 18:10-20.)

### 2.    Defendants Destroyed Documents With a Culpable State of Mind

In blatant derogation of this duty, the County and its counsel did not implement *any* litigation hold until March 9, 2020—more than a year after the action was filed and *after the close of discovery*.  During that lengthy period, "not only were employees given no affirmative instructions to preserve potentially relevant documents, but some employees may have been encouraged to keep the size of their email accounts below certain limits, and moreover may have received automatic notices

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

14.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

1  requesting that they reduce the size of their email accounts." *Apple*, 888 F. Supp. 2d at 997 (finding

2  documents were destroyed after duty to preserve arose).  Indeed, Deputies Castellanos and Martinez

3  admit to deleting highly relevant text messages about the December Incident and to deleting emails

4  without reading them upon receipt of the "mailbox full" notification.  (*See supra,* Section II.E.)  This

5  is exactly the kind of culpable spoliation that courts (and Judge Alsup) have pronounced sanctionable.

6          "In the Ninth Circuit, a party may be entitled to an adverse inference instruction based on

7  spoliation even in the absence of a finding of bad faith." *Apple*, 888 F. Supp. 2d at 998; *see also*

8  *Napster*, 462 F. Supp. 2d at 1066–67 ("A party's destruction of evidence need not be in bad faith to

9  warrant a court's imposition of sanctions.").  Rather, the party need only have "acted with conscious

10  disregard of its obligations." *Apple*, 888 F. Supp. 2d at 998.  "At a minimum, the culpable state of

11  mind is negligence." *Olney v. Job.com*, 2014 WL 5430350, at *13 (E.D. Cal. Oct. 24, 2014) (imposing

12  sanctions where party was "at least negligent"); *see Napster*, 462 F. Supp. 2d at 1078 (party's deletion

13  of communications knowing that a duty to preserve them existed amounted to "gross negligence, if

14  not willfulness, which is sufficient culpability to justify an adverse inference").

15          *Apple* is particularly instructive.  There, Judge Koh found that "Apple acted with not just

16  simple negligence but rather conscious disregard of its duty to preserve" where it "fail[ed] to do as

17  little as issue a litigation hold notice to any employees for eight months after its preservation duty

18  arose, and [] further delay[ed] issuance of litigation hold notices to several key custodians . . . ." 888

19  F. Supp. 2d at 998.  Here, the County failed to implement any hold *at all* for almost two years.  (*See*

20  *supra*, Section II.B.)  Worse yet, when the hold was finally enacted in March 2020, it did not apply to

21  other key County witnesses whom the County, itself, identified in its February 2019 initial disclosures

22  (*see* Ex. 4 (disclosing as relevant witnesses County Probation Officers Alice Anamosa and Agustin

23  Perez, and Sheriff's Deputies Todd Dunia and Robert Rumfelt[9])), and it did not apply to other key

24  custodians the County identified on April 26, 2019 (*see* Ex. 9 at 2 (proposing Lake County Sheriff

25  Brian Martin, Sergeant John Drewrey, and Lieutenant Luke Bingham as the relevant custodians, in

26  addition to the three Deputies).)  *To date, none of these individuals have received a litigation hold.*

27

28

---

[9] Plaintiffs later deposed all of these save Deputy Rumfelt, who died in August 2017.  Because no hold
was implemented, Plaintiffs were likely deprived of relevant documents at these depositions.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO
15.
PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

1    Moreover, Castellanos and Martinez both acknowledged at least some understanding (albeit

2    wrong) of their duty to preserve documents as of February 2020, yet both admitted to having deleted

3    relevant text messages and emails throughout the litigation.  (*See supra*, Sections II.B. n.6 & II.E.)

4    Further demonstrating a culpable state of mind, *both* Deputies deleted a *group* Text Chain containing

5    harmful and offensive references to the Plaintiffs and the events at issue in the lawsuit, and then *both*

6    *rejoined* the same text group.  *See First Financial Sec., Inc. v. Freedom Equity Grp., LLC*, 2016 WL

7    5870218, at *3 (N.D. Cal. Oct. 7, 2016) (inferring a "shared intent to keep incriminating facts out of

8    evidence" from an agreement among the parties to avoid communicating electronically, and deeming

9    "unlikely" the "alternative explanation . . . [that] each one of them happened to have a habit of routinely

10   deleting text messages").  Such behavior on the part of the County and Deputies Martinez and

11   Castellanos constitutes "gross negligence, if not willfulness." *See Napster*, 462 F. Supp. 2d at 1078.[10]

### 3.    The Deleted Evidence Was Relevant to Plaintiffs' Claims

13   "In the Ninth Circuit, spoliation of evidence raises a presumption that the destroyed evidence

14   goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed

15   it." *Dong Ah Tire & Rubber Co. v. Glasforms, Inc.*, 2009 WL 1949124, at *10 (N.D. Cal. July 2,

16   2009) (citing *Phoceene Sous–Marine, S.A. v. U.S. Phosmarine, Inc.*, 682 F.2d 802, 806 (9th Cir.

17   1982)).  "[B]ecause 'the relevance of . . . [destroyed] documents cannot be clearly ascertained because

18   the documents no longer exist,' a party 'can hardly assert any presumption of irrelevance as to the

19   destroyed documents.'"  *Leon*, 464 F.3d at 959; *see also Napster*, 462 F. Supp. 2d at 1076 (same).

20   In *Apple*, the court considered the "paltry production of emails and documents from at least 13

21   key Apple witnesses" in finding it was "reasonable to infer that documents produced by these key

22   Apple witnesses, who are named inventors on various Apple patents asserted in this suit, would have

23   been relevant to this litigation, and likewise that the destruction of any such documents prejudiced

24   Samsung." 888 F. Supp. 2d at 998-99.  Similarly here, Defendants have produced no text messages

---

[10] Even if Castellanos and Martinez truly did not understand their preservation obligations, that would only serve to demonstrate the culpability of the County and its counsel.  *See Nat'l Ass'n of Radiation Survivors v. Turnage*, 115 F.R.D. 543, 557 (N.D. Cal. 1987) ("After more than three years of litigation, the V.A. can hardly assert that it was not on notice of the issues involved in this lawsuit.  It is no defense to suggest, as the defendant attempts, that particular employees were not on notice. To hold otherwise would permit an agency, corporate officer, or legal department to shield itself from discovery obligations by keeping its employees ignorant.").

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

16.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

1   from 2017 or 2018, and very few emails.  (*See supra*, Sections II.E–G; Dunning Decl. ¶¶ 46–47.)

2   Indeed, of all the emails produced by the County that reference Lindsay Williams, there were none

3   from 2017 (the year of the Incidents), there were no emails with Deputy Castellanos at all, and there

4   appear to be just eight emails from 2018 with Deputy Martinez and four with Deputy White.  (*Id.*)

5   Further, the County has only produced one email from key custodian Alice Anamosa, Lindsay

6   Williams's probation officer from September 2016 to November 2017.  (Dunning Decl. at ¶ 30.)

7        The limited evidence Plaintiffs have been able to obtain from other sources shows the Deputies

8   communicated regularly about Lindsay Williams.  Among other things, Castellanos texted Officer

9   Eastham about Lindsay the night of the December Incident (*see* Ex. 7); a group of County deputies

10  (including Castellanos and Martinez) sent callous text messages in March 2019 about Lindsay and his

11  family (reflecting a lack of training and a disregard for Plaintiffs and the sanctity of their homes) (*see*

12  Ex. 23); Martinez texted with Lindsay's parole agent, Christopher Rotondo, about Lindsay in March

13  2019 (*see id.*); White texted Agent Rotondo about Lindsay throughout 2019 (*see supra*, Section II.E.);

14  and Castellanos and Martinez have continued to text other deputies about Lindsay into 2020 (*see id.*).

15  The gap in communications from 2017 to 2019 is glaring and conspicuous, and suggests a high

16  probability that relevant communications were deleted, particularly when coupled with admissions

17  that Castellanos and Martinez have been regularly deleting text messages and emails throughout the

18  litigation.  *See Leon*, 464 F.3d at 959–60 (finding that "any number of the 2,200 files [Leon deleted]

19  could have been relevant to [his employer's] claims or defenses, although it is impossible to identify

20  which files and how they might have been used," and observing that "the types of files Leon would

21  have deleted out of privacy concerns would 'likely be at the heart of [his employer's] defense'").

22          **4.**    **An Adverse Inference Sanction Is Warranted**

23        In considering what spoliation sanction to impose, courts consider three factors: "(1) the degree

24  of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the

25  opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the

26  opposing party."  *Apple*, 888 F. Supp. 2d at 992.  "Courts should choose the least onerous sanction

27  corresponding to the willfulness of the destructive act and the prejudice suffered . . . ."  *Id.*  "[A]dverse

28  inference instruction[s] can take many forms, [] ranging in degrees of harshness."  *Id.* at 994.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

17.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

Again, *Apple* is instructive.  There, the Court concluded that Apple was prejudiced: "though neither Apple nor the Court may ever know the contents of any destroyed Samsung emails, the fact that the emails of key Samsung witnesses were among those destroyed permits the reasonable inference that Apple was prejudiced by Samsung's spoliation." *Id.* at 993, 999.  The Court relied in part on the Ninth Circuit's holding in *Leon*, which similarly found prejudice where potentially relevant files were destroyed, even though the contents were unknown.  *Id.* (citing *Leon*, 464 F.3d at 960).  But, the Court held that only a "mild" adverse inference instruction was warranted.  *Id.* at 995, 999 (ordering the following instruction: "[Samsung] has failed to preserve evidence for Apple's use in this litigation after its duty to preserve arose.  Whether this fact is important to you in reaching a verdict in this case is for you to decide").  *See also Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, 2016 WL 6609208, at *24–25 (C.D. Cal. July 12, 2016), *report and recommendation adopted*, 2016 WL 6901696 (C.D. Cal. Sept. 2, 2016) (awarding adverse inference instruction: "OS failed to institute a litigation hold, acted with conscious disregard towards its duty to preserve evidence, and was at least grossly negligent in the management of its . . . email archive.  Emails recovered from third parties show the spoliated evidence was relevant to HM's claims of trade dress infringement").

Here, Plaintiffs are similarly prejudiced in their ability to put on evidence of the Deputy Defendants' state of mind before, at the time of, and shortly after the Incidents due to their deletion of relevant text messages and emails, and the County's failure to enact a litigation hold.  Moreover, the spoliated evidence cannot be recovered. (*See supra*, Section II.G.).  Plaintiffs therefore seek a mild adverse inference sanction akin to the one Judge Koh awarded, as follows:

> Defendants have failed to preserve evidence for Plaintiffs' use in this case after their duty to preserve arose, including relevant emails and text messages between the Deputies about the Incidents in question.  You may, but need not, presume that the deleted text messages and emails were favorable to Plaintiffs.  Whether Defendants' failure to preserve is important to you in reaching a verdict in this case, and what that failure signifies, is for you to decide.[11]

[11] "Under its 'inherent powers,' a district court may also award sanctions in the form of attorneys' fees against a party or counsel who acts in bad faith, vexatiously, wantonly, or for oppressive reasons." *Leon*, 464 F.3d at 961.  Defendants and counsel's conduct clearly constitutes bad faith.  *See, e.g., Blumenthal*, 2016 WL 6609208, at *27 (finding the following "tantamount to bad faith": "never institut[ing] a proper litigation hold"; making "a number of misrepresentations to the court and [other side] regarding [] discovery efforts"; "disobey[ing] a court order"; and "gross negligence le[ading] to spoliation").  Accordingly, Plaintiffs also seek monetary sanctions in the form of attorneys' fees and

Cooley LLP
Attorneys At Law
Palo Alto

18.

Plaintiffs' Motion for Sanctions and
Adverse Inference Jury Instruction
Case No. 3:18-cv-06935-WHA

**B.     The Court Should Order Sanctions Pursuant to Rule 37(e)**

"The most recent amendment to Federal Rule of Civil Procedure ("FRCP") 37(e) prescribes a distinct standard for issuing sanctions in response to the spoliation of [ESI]." *First Financial*, 2016 WL 5870218, at *2. "If a party was obligated to preserve the lost information 'in the anticipation or conduct of litigation' and the party 'failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery,' then: (1) upon a finding of prejudice the court 'may order measures no greater than necessary to cure the prejudice'; or (2) upon a finding of acting with intent to deprive another party of the evidence the court may presume the lost information was unfavorable to the party, or instruct the jury 'it may or must presume the information was unfavorable to the party,' or 'dismiss the action or enter default judgment.'" *Id.* (quoting Rule 37(e)).   Here, Plaintiffs are entitled to monetary sanctions and an adverse inference instruction because Defendants spoliated evidence, Plaintiffs have been prejudiced, and Defendants acted with intent.

**1.     Defendants Spoliated Evidence in Contravention of Rule 37(e)**

All three of the Rule 37(e) criteria are easily met here.  First, as discussed above (*see* Section IV.A.1)*,* there can be no question that the County had a duty to preserve the lost ESI, comprised of text messages and emails from 2017 to 2019 relating to Plaintiffs' claims.  *See Porter*, 2018 WL 4215602, at *3 (duty to preserve arose upon service of administrative claim).  Second, it is similarly clear that Mr. Whitefleet and Defendants failed to take reasonable steps to preserve evidence—failing to implement a litigation hold and actually deleting documents.  *See id.* at *3 (City spoliated evidence where, aside from forwarding plaintiff's request that evidence be preserved, it "took no other steps to ensure that the evidence was preserved until . . . nearly a year after it had been erased"); *First Financial*, 2016 WL 5870218, at *3 (where party conceded that its agents deleted discoverable text messages after its preservation duty arose, court was "persuaded" that it took no reasonable steps to preserve text messages).  (*See also supra*, Sections II.B & E.)  Third, as in *First Financial*, there is a clear admission that the Deputies deleted discoverable text and email messages, which cannot be restored or replaced.  (*See supra*, Sections II.E & G.)  The fact that Plaintiffs were able to obtain *some*

costs, both under the Court's inherent powers, and as discussed more fully below in Sections IV.B. and C.

of the deleted text messages from other sources is irrelevant and merely serves to show the likelihood that there were other deleted materials that remain missing. *See Blumenthal*, 2016 WL 6609208, at \*17, 24 (finding that documents recovered from a more recent time period and from other sources demonstrate "the likelihood that older emails relevant to th[e] case have been purged . . . due to [party's] failure to institute a litigation hold); *see also Napster*, 462 F. Supp. 2d at 1077 n.5 (the content of emails recovered from other sources is probative of the contents of lost emails). Accordingly, Defendants' conduct satisfies the standard for spoliation under Rule 37(e).

### 2.    Plaintiffs Have Been Prejudiced and Are Entitled to Monetary Damages

Plaintiffs have been prejudiced under Rule 37(e)(1). *See, e.g., Hugler v. Southwest Fuel Mgmt., Inc.*, 2017 WL 8941163, at \*9 (C.D. Cal. May 2, 2017) (quoting *Apple*, 888 F. Supp. 2d at 993) ("[S]poliation of evidence raises a presumption that the destroyed evidence goes to the merits of the case, and further, that such evidence was adverse to the party that destroyed it."); *see also First Financial*, 2016 WL 5870218, at \*4 (finding First Financial was "prejudiced by the spoliation of text messages," where the spoliated text messages might have provided proof in support of their claim). As discussed above (*see* Sections IV.A.3 & 4), Plaintiffs have been prejudiced by Defendants' failure to implement a litigation hold and the subsequent spoliation of potentially relevant documents. Thus, Plaintiffs are entitled to "measures no greater than necessary to cure the prejudice." Rule 37(e)(1).

Where, as here, Plaintiffs are prejudiced by Defendants' spoliation, monetary sanctions are warranted under Rule 37(e). *See Matthew Enter., Inc. v. Chrysler Grp. LLC*, 2016 WL 2957133, at \*3–5 (N.D. Cal. May 23, 2016) (finding prejudice, noting that "Rule 37(e) intentionally leaves to the court's discretion exactly what measures are necessary," and awarding "reasonable attorney's fees [] incurred in bringing this [spoliation] motion"). In *Blumenthal*, for instance, having determined that Herman Miller suffered prejudice under Rule 37(e) due to "OS's failure to preserve ESI resulting in spoliated evidence that 'cannot be restored or replaced,'" the court awarded "monetary sanctions in the form of attorney's fees and expenses related to [its] forensic analysis of OS computers, and to [its] taking of depositions associated with determining the cause underlying OS's inability to export emails from its [] email archive or, more generally, the lack of ESI produced." *Id.* at \*26.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

20.

**PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA**

1    Accordingly, Plaintiffs seek attorneys' fees and costs in connection with the filing of this

2    motion, the filing of Plaintiffs' discovery motions relating to Defendants' failure to collect and review

3    ESI (Dkts. 96, 114), the deposition of Mr. French for the purpose of determining the adequacy of the

4    County's compliance with its discovery obligations (*see* Dkt. 123), the deposition of Deputy Newton,

5    who produced the Text Chain, and the second depositions of Castellanos and Martinez, all of which

6    were only necessary due to Defendants' failure to preserve and produce relevant ESI.  (*See* Dunning

7    Decl. ¶¶ 49-58.)  After substantial discounts and write offs for any duplication of effort, these fees and

8    costs total $105,949.98, with final amounts relating to this motion to be later determined.[12]

9
10   **3.      Defendants Acted With Culpable Intent, Warranting an Adverse Inference
         Instruction**

11   Plaintiffs are also entitled to sanctions under Rule 37(e)(2) because Defendants acted with the

12   intent to deprive Plaintiffs of the ability to use the lost ESI in this litigation.  "[C]ourts have found that

13   a party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is

14   reasonable to infer, that the party purposefully destroyed evidence to avoid its litigation

15   obligations."  *Porter*, 2018 WL 4215602, at *3 (citing *First Financial*, 2016 WL 5870218, at *3).

16   Further, "[i]ntent may be inferred if a party is on notice that documents were potentially relevant and

17   fails to take measures to preserve relevant evidence, or otherwise seeks to keep incriminating facts out

18   of evidence."  *Colonies Partners, L.P. v. Cty. of San Bernardino*, 2020 WL 1496444, at *9 (C.D. Cal.

19   Feb. 27, 2020), *report and recommendation adopted*,  2020 WL 1491339 (C.D. Cal. Mar. 27, 2020).

20   *First Financial* is particularly on point.  There, as here, the culpable parties claimed that "[i]f

21   [they] deleted a text message that [they] shouldn't have, it was purely out of ignorance or inadvertence

22   and that each of them has a habit of routinely delet[ing] text messages[.]"  *First Financial*, 2016 WL

23   5870218, at *3.  (*Compare* Ex. 24 at 415:13-16 (Castellanos has a "habit of deleting [his] messages .

24   . . every couple months").)  The court was not persuaded by this excuse, and instead "infer[red] that

25   [the culpable parties] created incriminating text messages, realized the text messages would be

26   discoverable, and, by deleting the text messages, acted improperly upon their shared intent to keep

---

[12] The Dunning Declaration explains in detail the specific fees and costs sought.  Should the Court find it helpful, Plaintiffs' counsel would be happy to submit further briefing and documentation in support of the fees request, including billing statements for *in camera* review.

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO                                          21.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

incriminating facts out of evidence." *Id.* This, the court found, satisfied the intent requirement of Rule 37(e)(2). *Id.* Like Judge Koh, however, the *First Financial* court found that a milder adverse inference was appropriate under the circumstances, and held that the jury should be instructed "that it may, but need not, presume the spoliated text messages were favorable to [First Financial] . . . ." *Id.* at *4.

Here, as described above (*see supra,* Section IV.A.2), it is reasonable to infer that Defendants Castellanos and Martinez intentionally destroyed text messages in an attempt to avoid their discovery obligations. The fact that they both deleted a group Text Chain containing harmful and offensive references to the Plaintiffs and the events at issue in the lawsuit, and then both rejoined the same group Text Chain suggests, as in *First Financial*, that they each created incriminating text messages, realized they would be discoverable, and then deleted them. Moreover, these text messages raise the question of what has been intentionally deleted that Plaintiffs are not aware of. Accordingly, pursuant to Rule 37(e)(2), Plaintiffs are entitled to the following adverse inference jury instruction described above.

## C.     The Court Should Order Sanctions Pursuant to Rule 26(g)

Rule 26(g) requires a signing attorney to certify that his responses are "not interposed for any improper purpose, such as to . . . cause unnecessary delay, or needlessly increase the cost of litigation." Rule 26(g). Indeed, a signing attorney certifies "that a reasonable inquiry has been made with respect to the factual and legal basis for any discovery request or response." *Rodman v. Safeway Inc.*, 2016 WL 5791210, at *2 (N.D. Cal. Oct. 4, 2016), *as amended* (Oct. 6, 2016). Courts measure the reasonableness of an attorney's actions in undertaking this "affirmative duty" by an objective standard. *Id.* Where a certification "violates the Rule without substantial justification the court, . . . *must* impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." *Id.* (emphasis in original). By any objective measure, defense counsel violated Rule 26(g) by certifying responses to Plaintiffs' discovery requests without making reasonable inquiry. As a result of these violations, Plaintiffs incurred significant costs and fees, warranting monetary sanctions. *Id.*

### 1.     Counsel Failed to Comply with Basic Discovery Obligations

Defense counsel failed to comply with basic discovery obligations in violation of Rule 26(g). Specifically, counsel: (1) failed to take adequate steps to preserve documents; (2) failed to sufficiently monitor Defendants' searches for electronic discovery; and (3) failed to conduct adequate searches for

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

22.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

1   responsive documents.  As a result, counsel's discovery representations and disclosures were not

2   "complete and correct as of the time [they were] made," warranting sanctions.  Rule 26(g).

3          First, despite assurances to the contrary, counsel failed to take adequate steps to preserve

4   documents, leading to the permanent deletion of responsive and potentially critical discovery.  *See*

5   *Carillo v. Schneider Logistics, Inc.*, 2012 WL 4791614, at *9 (C.D. Cal. Oct. 5, 2012) (Rule 26(g)

6   violated where counsel issued late and inadequate litigation hold, leading to manual deletion from

7   email inbox, followed by an automatic permanent deletion 45 days later); *Wingnut Films, Ltd. v. Katja*

8   *Motion Pictures Corp.*, 2007 WL 2758571, at *14–15 (C.D. Cal. Sept. 18, 2007) (Rule 26(g) violated

9   where counsel did not issue a litigation hold or suspend automatic electronic document destruction

10  policy).  Specifically, counsel failed to inform the Deputies of their duty to preserve documents,

11  leading to the deletion of responsive materials.  (*See* Ex. 13 at 306:24–307:2 & Ex. 25 at 396:16–

12  397:9, 401:23–410:2 (Martinez had no or, at best, incorrect understanding of his preservation

13  obligation, and deleted relevant texts); Ex. 24 at 359:18-25, 415:8–416:15 (Castellanos had incorrect

14  understanding of preservation obligation and deleted text messages).)  Further, counsel did not direct

15  the County to preserve the Deputies' email accounts until well over a year after the case was filed

16  (Ex. 26 at 41:18–43:6), and has *never* directed the County to preserve any other documents.  (*Id.* at

17  43:7–45:23.)  Thus, County employees have for years been receiving instructions to delete emails

18  when their small accounts reach capacity, and the deleted emails cannot be recovered.  (*Id.* at 19:17–

19  20:21, 24:20-23; *see also supra*, Section II.E.)

20         Second, counsel failed to sufficiently monitor Defendants' searches for ESI to ensure that they

21  were conducted properly and thoroughly.  *Rodman*, 2016 WL 5791210, at *3 (counsel's "lack of

22  guidance and oversight [regarding clients' searches] supports a finding of unreasonableness" because

23  the client had no experience searching in electronic document repositories).  "[I]t is not enough for

24  counsel to simply give instructions to his clients and count on them to fulfill their discovery

25  obligations.  [Rule 26(g)] place[s] an *affirmative obligation* on an attorney to ensure that a client's

26  search for responsive documents and information is complete," particularly where there are "obvious

27  gaps and underproduction."  *Logtale*, 2013 WL 3967750, at *2 (emphasis in original).

28

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

23.

1    Here, counsel refused to image and search the Deputies' cell phones until he was ordered to

2    do so by this Court in March 2020 (*after the evidence as already deleted*).  (*See supra*, Sections II.C

3    & G.)  Counsel also failed to sufficiently monitor the searches of the Deputies' personal ESI.  Counsel

4    represented on September 3, 2019 that "[Martinez] has conducted a thorough search of [his] cell

5    phone.  No responsive documents were found in that search." (Ex. 15 at 8–9.)  But Martinez testified

6    on August 7, 2019 that he had conducted no such search, (Ex. 13 at 314:23-315:3), and to this day, he

7    has not produced a single text message from before 2020, despite the fact that he had responsive text

8    messages on his phone prior to that time.  (*See* Ex. 25 at 396:16–397:9 (admitting to texting about

9    Lindsay Williams), Ex. 23 (multiple texts about Lindsay in 2019), Dunning Decl. ¶ 47b (texting about

10   Lindsay the day before his deposition).)  Counsel also failed to instruct Deputy Castellanos *how* to

11   search text messages on his cell phone—which Castellanos does not know how to do—resulting in an

12   improper search based entirely on Castellanos's memory.  (Ex. 24 at 380:19–383:15.)  *See Wingnut*,

13   2007 WL 2758571, at *13-14 (finding no meaningful search where "even those employees who did

14   collect emails were given little or no guidance on where to search (e.g., inbox, sent items, deleted

15   items, archived folders) or how to conduct their search (e.g., keyword searching)").)

16        Third, counsel failed to conduct adequate searches for ESI.  *See id.* (Rule 26(g) violated where

17   defendant failed to conduct adequate searches on company servers); *Carillo*, 2012 WL 4791614, at *5

18   (finding defendant's "haphazard search for records" to violate Rule 26(g)).  In *Carillo*, for instance,

19   defendant "claimed [] it had produced all responsive documents or [] did not have any" only to have

20   other defendants produce documents it created "that were directly responsive to plaintiffs' requests."

21   *Id.* at *3.  Similarly here, defense counsel represented that the Deputies had conducted a diligent search

22   of their cell phones and there were no responsive documents.  (*See* Ex. 15 (response to RFP Nos. 9,

23   10, and 12) and Ex. 11 at 1 (representing in meet and confer that there were no responsive text

24   messages.)  Yet Plaintiffs learned from other sources that, in fact, there were responsive text messages

25   that had been deleted from the Deputies' cell phones.  (*See supra*, Section II.D & E.)

26        Counsel also made numerous representations that he would search and produce the County's

27   responsive ESI (*see, e.g.*, Ex. 10 (agreeing in response to RFP No. 25 to produce documents relating

28   to Lindsay Williams) and Ex. 16 at 3 (agreeing in meet and confer to review the County's ESI for 23

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

24.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA

search terms, including "Lindsay AND Williams")). Yet again, Plaintiffs learned at the deposition of the County's IT Director that, after months of promises and excuses, counsel failed to actually review any ESI relating to Lindsay Williams until well after the close of fact discovery, and after Defendants deleted their emails. (*See supra*, Section II.F.) Indeed, counsel's actions throughout the discovery process—including misrepresenting his efforts to search for documents, continuously failing to respond to emails, and failing to discuss obvious errors in email hit counts with his clients (*see id.*)— have been far from "objectively reasonable." *See Rodman*, 2016 WL 5791210, at *4. Such conduct has caused unnecessary delay, and needlessly increased the cost of litigation in violation of Rule 26(g).

### 2.    Monetary Sanctions Are Warranted

Because counsel cannot show that the described violations of Rule 26(g) were substantially justified, the Court should impose monetary sanctions. *See Carillo*, 2012 WL 4791614, at *3, 12 (awarding attorneys' fees and costs where defendant "repeatedly represented that diligent searches had been made and that all responsive documents had been produced, only to turn around and 'find' more documents after plaintiffs proved those contentions were false"); *Wingnut*, 2007 WL 2758571, at *16, 20 (monetary sanctions granted where, among other things, plaintiffs were forced to complete depositions of witnesses before defendants produced critical documents). Plaintiffs here have suffered prejudice as a result of counsel's violations and, as detailed in the Dunning Declaration, have incurred substantial fees and costs resulting from the unnecessary time spent requesting missing documents and undertaking additional depositions, as new documents were revealed to Plaintiffs that should have been produced at an earlier date. (*See* Dunning Decl. ¶¶ 49–57.)

## V.    CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs Motion, award monetary sanctions, and issue an order requiring that the jury be given an appropriate adverse inference instruction.

Dated: May 12, 2020                         COOLEY, LLP

By:   _____*/s/ Angela L. Dunning*_____
                Angela L. Dunning

*Attorneys for Plaintiffs*

223976759

COOLEY LLP
ATTORNEYS AT LAW
PALO ALTO

25.

PLAINTIFFS' MOTION FOR SANCTIONS AND
ADVERSE INFERENCE JURY INSTRUCTION
CASE NO. 3:18-CV-06935-WHA