1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEVERLY JOHN, et al.,

           Plaintiffs,

     v.

COUNTY OF LAKE, et al.,

           Defendants.

Case No. 18-cv-06935-WHA  (SK)

**ORDER REGARDING MOTION FOR SANCTIONS**

Regarding Docket No. 146

       Plaintiffs seek an order finding that Defendants and their counsel spoliated evidence and also request that the Court give the jury an instruction that Defendants breached their obligations to provide discovery and that the jury can consider this fact in reaching a verdict (the "adverse inference" instruction).  Plaintiffs also seek monetary sanctions for the attorneys' fees expended in bringing this motion and in seeking additional discovery to file this motion.  For the reasons set forth below, the Court finds that Defendants or their counsel breached their obligations to provide discovery and that monetary sanctions are appropriate.  The Court also recommends that the District Court provide an adverse inference instruction to the jury at trial.  The Court will award Plaintiffs the fees and costs they incurred in moving to compel but reserves ruling on the amount awarded pending further submission regarding Plaintiffs' fees and costs for the reply.

## BACKGROUND

       This case arises out of two searches in November and December 2017 for Lindsay Williams, who was on probation and the subject of an arrest warrant, at residences inhabited by his family members (Beverly John, Jacqueline John, Lyann Williams, and Mario Williams (now deceased)).  In general, Plaintiffs contend that Defendants searched their residences unlawfully and that they used excessive force in those searches.  The dispute about the legality of the searches centers on whether Lindsay Williams lived at the residences that were searched in November and

1   December 2017 and whether Defendants had reason to believe that he lived there.

2        On May 15, 2018, Plaintiffs Beverly John and Jacqueline John filed an administrative

3   claim with Lake County for damages for the allegedly illegal search of their home in November

4   2017.  (Dkt. No. 146-2 (Dunning Decl., Ex. 1).)  That claim referred specifically to law

5   enforcement officers Antonio Castellanos and Cody White, later named as individual defendants

6   in this case.  (Dkt. No. 146-2 (Dunning Decl., Ex. 1); Dkt. No. 1 (Complaint).)  On June 8, 2018,

7   Plaintiffs Lyann Williams and Mario Williams filed  an administrative claim with Lake County for

8   damages for the allegedly illegal search of their home in December 2017.  (Dkt. No. 146-2

9   (Dunning Decl., Ex. 2).)  That claim specifically referred to Castellanos.  (Dkt. No. 146-2

10  (Dunning Decl., Ex. 2).)  Lake County rejected those claims.  (Dkt. No. 146-2 (Dunning Decl., Ex.

11  3).)

12       On November 15, 2018, Plaintiffs filed this suit.  (Dkt. No. 1.)  Plaintiffs named as

13  defendants Lake County, Castellanos, White, the City of Lakeport, and additional law enforcement

14  officers Joseph Eastham and Mark Steele.  (Dkt. No. 1).  Plaintiffs made the following claims: (1)

15  violation of 42 U.S.C. § 1983 for unreasonable search in violation of the Fourth Amendment to the

16  U.S. Constitution, (2) violation of 42 U.S.C. § 1983 for invasion of privacy in violation of the

17  Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution, (3)  violation of 42 U.S.C. §

18  1983 for use of excessive force in violation of the Fourth Amendment to the U.S. Constitution, (4)

19  violation of the California Constitution, Article 1, Section 13 – unreasonable search, (5) violation

20  of the California Constitution, Article 1, Section 1 – invasion of privacy, (6) violation of the

21  California Civil Code § 52.1 (Bane Act), (7) battery under California common law, (8) assault

22  under California common law, (9) intentional infliction of emotional distress, (10) negligent

23  infliction of emotional distress, and (11) negligence.  (Dkt. No. 1.)

24       On February 14, 2019, the District Court, in a hearing, addressed Plaintiffs' concerns about

25  Defendants' unwillingness to confirm that they were preserving evidence pursuant to a litigation

26  hold.  (Dkt. No. 134.)  The District Court stated:

27            Anything that relates directly to the case, like emails, text messages,
              voicemails, memos, handwritten notes, they should be preserved.
28            And any document-destruction program should be interdicted in order

United States District Court
Northern District of California

2

> to stop it.  And if you fail to do that, on either side, then very likely
> the jury will be told . . . [Y]ou have a duty, as the lawyers, to tell your
> clients that.  So, please do so.

(Dkt. No. 134 at 18:10-19.)

On February 7, 2019, Plaintiffs served their first request for production of documents on Lake County.  (Dkt. No. 146-1 (Dunning Decl. ¶ 15).)  Plaintiffs requested:  "All DOCUMENTS and COMMUNICATIONS CONCERNING Lindsay Williams."  (Dkt. No. 146-2 (Ex. 10).)  On February 22, 2019, Plaintiffs issued to Castellanos a request for production of documents in which Plaintiffs sought emails and text messages regarding the November 2017 and December 2017 incidents by requesting "[a]ll DOCUMENTS, INCLUDING written records, video and audio recordings, incident reports, notes, dispatch calls or records, text messages, e-mails or other electronic messages, phone records, and voicemails, and COMMUNICATIONS, INCLUDING with the CITY, CONCERNING" the November 2017 and December 2017 incidents.  (Dkt. No. 146-2 (Dunning Decl., Ex. 6).)  Plaintiffs also served a request for production of documents on White (Dkt. No. 146-1 (Dunning Decl. ¶ 15)) but did not provide a copy for this motion. Defendants Castellanos and White responded that they had no phone records.  (Dkt. No. 146-2 (Dunning Decl. Ex. 11).)  On September 3, 2019, Martinez responded to a request for all documents, including, among other things, "text messages, e-mails and other electronic messages, phone records, and voicemails" stated that he had nothing responsive and that he would produce any responsive emails. (Dkt. No. 146-2 (Dunning Decl. Ex. 15).)

Throughout the spring and summer of 2019, Plaintiffs met and conferred with Defendants about the production of electronically stored information.  (Dkt. No. 146-2 (Dunning Decl. Exs.  8, 9, 11, 12).)  Defendants represented, among other things, that the individual Defendants did not use their cell phones to communicate about the November 2017 and December 2017 incidents and that there were no responsive phone records.  (Dkt. No. 146-2 (Dunning Decl. Ex. 11).)

After motion practice, Plaintiffs filed a First Amended Complaint adding Jose Martinez as a defendant.  (Dkt. No. 53.)  Both the original Complaint and the First Amended Complaint alleged that Lake County was liable for the acts of the individual defendants in violating Plaintiffs' Constitutional rights because of a failure to train them adequately, pursuant to *Monell v.*

3

1   *Department of Social Services of City of New York*, 436 U.S. 658 (1978).

2        On August 7, 2019, Martinez testified in deposition that no one had asked him to preserve

3   documents in connection with the litigation and that he could not remember communicating via

4   text message with anyone about the November 2017 and December 2017 incidents.  (Dkt. No.

5   146-2 (Dunning Decl. Ex. 13).)

6        On August 8, 2019, White testified that he never communicated via text message with

7   Castellanos or White about Lindsay Williams.  (Dkt. No. 146-2 (Dunning Decl. Ex. 14).)

8        On November 21, 2019, Castellanos testified in deposition that, with one exception he did

9   not communicate via text message with anyone – law enforcement or otherwise – about Lindsay

10   Williams.  (Dkt. No. 146-2 (Dunning Decl. Ex. 18).)

11        On December 3, 2019, Lake County's witness pursuant to Fed.R.Civ.P. 30(b)(6), Luke

12   Bingham, testified that Lake County had not taken steps to preserve emails in connection with the

13   litigation.  (Dkt. No. 146-2 (Dunning Decl. Ex. 19).)

14        On December 3, 2019, factual discovery for this case closed, per the District Court's

15   Order.  (Dkt. No. 39.)  Defendants had not produced any text messages about the November 2017

16   and December 2017 incidents.  (Dkt. No. 146-1 (Dunning Decl. ¶ 33).)

17        On December 9, 2019, Plaintiffs filed a letter brief in support of a motion to compel

18   documents in which Plaintiffs sought electronically stored information from the individual

19   defendants' cell phones and from Lake County's electronic mail server.  (Dkt. No. 96.)

20        On December 18, 2019, at a mandatory session to meet and confer, Defendants informed

21   Plaintiffs that he had a chain of text messages between and among individual Defendants and that

22   Defendants had withheld those messages on the grounds of relevance.  (Dkt. No. 146-2 (Dunning

23   Decl. ¶ 34).)  The District Court reviewed the test message *in camera* and ordered production.

24   (Dkt. No. 146-2 (Dunning Decl. Ex. 20).)

25        The District Court allowed Plaintiffs only to take additional discovery until February 28,

26   2020 and referred all discovery matters to the undersigned.  (Dkt Nos. 104, 105.)  Defendants then

27   produced the text message chain to Plaintiffs on December 19, 2029. (Dkt. No. 146-1 (Dunning

28   Decl. ¶ 37); Dkt. No. 146-2 (Dunning Decl. Ex. 21).)  Those text messages showed a discussion

United States District Court
Northern District of California

4

1    between and among some of the individual Defendants and other law enforcement officers

2    regarding the search for Lindsay Williams – the subject of this litigation.  (Dkt. No. 146-2

3    (Dunning Decl. Ex. 21).)  On January 30, 2020, Defendants then produced a new version of the

4    text message chain with additional messages also relevant to this matter.  (Dkt. No. 146-2

5    (Dunning Decl. Ex. 23).)

6        That text message chain contained the following statements:

7            Comment:  "Lindsay Williams is about to have a parole warrant for
             beating his baby momma."
8
             Comment by Castellanos: "Let's go conduct another search for him."
9
             Comment by Martinez: "He beat up his baby momma stole her phone
10           money and car.  One of your sergeants went and took a report this
             afternoon[.]  Hey [*sic*] supposed be [*sic*] staying at his moms [*sic*]
11           house on Soto Bay Road right by Mission rancheria but I don't know
             the address.  You guys have it in your system because he's been
12           arrested there before[.]  He's *** on soda bay[.]"

13           Comment:  "Assumed after we got the report that Lindsay was in there
             with him.  Driving a 90s Yota pickup."
14
             Comments by Martinez:  "I doubt that family would decline a search
15           knowing their doors would get kicked in."

16           Comment by Martinez:  "I would kick down another door at that
             house without hesitation."
17
             Comment by Martinez:  "His parole agent told us that's where he may
18           be at.  Just give it some time.  He'll be back if he actually did leave to
             Hopland."
19

20   (Dkt. No. 146-2 (Dunning Decl. Exs. 21, 23).)  Officers other than the individual Defendants

21   provided this text message chain.  (Dkt. No. 156 at pages 7 n.2 and 13.)

22       Counsel to Castellanos and Martinez stated that Castellanos and Martinez had deleted the

23   text chain from their cell phones and that there had been no previous attempt to create an image of

24   the cell phones for discovery.  (Dkt. No. 146-1 (Dunning Decl. ¶ 40).)  Counsel also confirmed

25   that counsel had not searched the cell phones for responsive messages and instead had relied upon

26   the individuals to search their own cell phones.  (Dkt. No. 146-1 (Dunning Decl. ¶ 40).)

27       On February 11, 2020, the parties filed a joint letter brief for the undersigned.  (Dkt. No.

28   114.)  In that letter brief, Plaintiffs sought text messages and other electronically stored

United States District Court
Northern District of California

United States District Court
Northern District of California

1   information that Defendants had not produced.  (Dkt. No. 114.)

2          On February 25, 2020, Castellanos testified in his deposition that he deleted emails when

3   his mailbox was full, after he received a message that his mailbox was full, and that he did not

4   review them when he did so.  (Dkt. No. 146-2 (Dunning Decl. Ex. 24).)  He searched his text

5   messages for responsive documents but did not review them all, did not run any search terms for

6   his search of his text messages, and did not provide his cell phone for imaging or searching to any

7   other person.  (Dkt. No. 146-2 (Dunning Decl. Ex. 24).)

8          On February 26, 2020, Martinez testified in his second deposition that he learned that he

9   was required to preserve documents related to the November 2017 incident but not the December

10  2017 incident.  (Dkt. No. 146-2 (Dunning Decl. Ex. 25).)  He also testified that he had continued

11  his regular practice of deleting text messages even after he had been informed of the need to

12  collect documents.  (Dkt. No. 146-2 (Dunning Decl. Ex. 25).)

13         On February 26, 2020, Plaintiffs took the deposition of non-defendant Deputy Nathaniel

14  Newton, because he was the source of the text chain message.  (Dkt. No. 146-1 (Dunning Decl. ¶¶

15  39, 53).)

16         On March 2, 2020, the undersigned held a hearing on the issue, and on March 4, 2020, the

17  undersigned issued an order which, among other things, allowed Plaintiffs to take a deposition of

18  the person at Lake County who performed the search of the email server, and giving leave to

19  Plaintiffs to seek sanctions.  (Dkt. No. 123.)

20         On March 4, 2020, the undersigned issued an order requiring that Defendants use an e-

21  discovery specialist to search the text messages of individual Defendants and to allow a deposition

22  of Lake County's IT specialist who performed the search of Lake County's email server.  (Dkt.

23  No. 123.)  The undersigned also allowed Plaintiffs, after meeting and conferring, to file a motion

24  for sanctions for spoliation if Plaintiffs found evidence of spoliation.  (Dkt. No. 123.)

25         On March 10, 2020, Plaintiffs took the deposition of Lake County's Director of

26  Information Technology Shane French, who testified that the first time he had been asked to put a

27  litigation hold on emails for Castellanos, White and Martinez was on March 9, 2020, the day

28  before the deposition, that he had never been asked to put a litigation hold on any other

1    employee's records or depository, and that, as IT Director, he would know if such a litigation hold

2    had been made.  (Dkt. No. 146-2 (Dunning Decl. Ex. 26).)

3         Defendants produced some additional documents after the renewed search.  (Dkt. No. 146-

4    1 (Dunning Decl. ¶¶ 46-47).)  Some of those documents were redacted, but Defendants did not

5    produce the unredacted versions or a log of the redactions.  (Dkt. No. 146-1 (Dunning Decl. ¶

6    48).)

7         On March 27, 2020, the District Court denied in part and granted in part Defendants'

8    motion for summary judgment, and on May 1, 2020, the District Court denied in part and granted

9    in part the competing motions for reconsideration.  (Dkt. Nos. 129, 144.)  As a result of the

10   motions and previous settlements, only some of the defendants and some of the claims remain.

11        On April 22, 2020, the undersigned ordered the parties to meet and confer regarding the

12   schedule for Plaintiffs' motion for spoliation.  (Dkt. No. 138.)  The parties were not able to resolve

13   their dispute and, thus, are before the undersigned on this motion.

14        The record shows a long history of meeting and conferring over these issues from the time

15   of Defendants' initial responses to the first request for production of documents.  (Dkt. No. 146-1

16   (Dunning Decl. ¶¶ 16, 18-23, 27-28, 31, 35, 37, 38, 40, 48); Dkt. No. 146-2 (Dunning Decl. Exs.

17   8-12, 16-17, 22, 27).)

18                                     **DISCUSSION**

19   **A.     Plaintiffs' Motion Does Not Violate Due Process.**

20        Defendants argue that Plaintiffs' motion for spoliation violates due process.  The argument

21   makes no sense, as Plaintiffs clearly identified the underlying law and the sanctions that they seek

22   in a detailed, thorough brief of 25 pages.

23   **B.     Plaintiffs' Motion Is Timely.**

24        Defendants argue that Plaintiffs' motion is not timely because Plaintiffs filed the motion

25   for than seven days after the close of discovery in violation of Northern District Civil Local Rule

26   37-3.  As noted above, Plaintiffs were given leave to file this motion according to a timetable set

27   forth in detailed orders.  (Dkt. Nos. 123, 138.)  Defendants' argument thus is not convincing.

28   / / /

United States District Court
Northern District of California

**C.      Sanctions Are Warranted Under Both Federal Rule of Civil Procedure 26 and 37.**

Plaintiffs seek sanctions under both Federal Rule of Civil Procedure 37 and the Court's inherent authority because of the destruction of electronically stored information ("ESI") in the form of text messages and emails.  Sanctions are warranted under both standards.

**1.      Federal Rule of Civil Procedure 37.**

Federal Rule of Civil Procedure 37(e) sets forth three criteria to determine whether spoliation of ESI has occurred: (1) the ESI "should have been preserved in the anticipation or conduct of litigation"; (2) the ESI "is lost because a party failed to take reasonable steps to preserve it"; and (3) "[the ESI] cannot be restored or replaced through additional discovery."  Fed. R. Civ. P. 37(e).  If these criteria are met and the court finds that there is "prejudice to another party from [the loss] of the ESI," Rule 37(e)(1) instructs a court to "order measures no greater than necessary to cure the prejudice."  Fed. R. Civ. P. 37(e)(1).

However, if ESI is destroyed and a party "acted with the intent to deprive another party of the information's use in the litigation," Rule 37(e)(2) authorizes the imposition of more severe sanctions, including a jury instruction of adverse inference.  Fed. R. Civ. P. 37(e)(2)(B) (a court may "instruct the jury that it may or must presume the [spoliated] information was unfavorable to the party").  Rule 37(e) does not define "intent."  However, the 2015 Advisory Committee Notes to the amendment of Rule 37(e) advise that "[n]egligent or even grossly negligent behavior" is insufficient to show "intent."  2015 Advisory Comm. Notes.  Accordingly, courts have found that a party's conduct satisfies Rule 37(e)(2)'s intent requirement when the evidence shows or it is reasonable to infer that the party purposefully destroyed evidence to avoid its obligations in litigation.  *See, e.g., Porter v. City & Cty. of San Francisco*, 2018 WL 4215602, *3 (N.D. Cal. Sept. 5, 2018) (citing cases).

Applying Rule 37(e), the Court finds that all three criteria are satisfied and that spoliation has occurred.  First, Defendants had the obligation to preserve evidence as soon as they received notice of the administrative claim, which Plaintiffs mailed on May 15, 2018.  *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (duty to preserve evidence reasonably related to claim arises at time litigant learns of potential claim); *see also Porter v. City*

United States District Court
Northern District of California

1  *& Cty. of San Francisco*, 2018 WL 4215602, at *3 (N.D. Cal. Sept. 5, 2018) (duty to preserve

2  arose when plaintiff served administrative claim under California Government Code).  Even if

3  Defendants were not on notice at that time, they clearly were at the time of the filing of the

4  Complaint on November 15, 2018.  *Stevenson v. City and Cty. of San Francisco*, 2015 WL

5  6177363, at *4 (N.D. Cal. Oct. 21, 2015).  Defendants had an even clearer obligation to search for

6  emails and text messages when Plaintiffs served their requests for production of documents,

7  explicitly asking for emails and text messages, in February 2019 and when the District Court here

8  warned Defendants on February 14, 2019, that they had a duty to preserve ESI (emails and text

9  messages included) and that they had a duty to "interdict" any usual policy of destruction.

10  Second, the ESI was lost because Defendants failed to take steps to preserve it.  With

11  regard to the email messages, the IT director for Lake County testified that he was not aware of a

12  litigation hold and that he never conducted a search of the email server, and individual Defendants

13  testified that they deleted emails and text messages after this litigation began.

14  With regard to text messages, the individual Defendants testified that they searched only

15  cursorily through their text messages for responsive messages and did not produce the key text

16  message chain described above, and there was no attempt to image their cell phones or run a

17  search across all their text messages for responsive messages.  The individual Defendants also

18  deleted text messages.  Worse, the individual Defendants testified that they did not use their cell

19  phones to discuss work when they clearly did in coordinating with other law enforcement officers

20  to arrest Lindsay Williams, as the text message chain supplied by a non-Defendant later showed.

21  Third, the ESI cannot be restored through other means.  There is no showing by

22  Defendants that they can recover deleted email messages or text messages.  Plaintiffs have met

23  and conferred with Defendants about these issues at length with no solution, and Plaintiffs even

24  took additional discovery, with leave, after the discovery deadline, to determine if Defendants

25  could recapture destroyed messages.  With regard to emails, Defendants argue with no citation to

26  evidence that, although individual Defendants deleted their emails, there is no evidence that the

27  system completely purged those emails.  Defendants imply, again with no citation to evidence,

28  that the emails were completely destroyed only if they were "double deleted."  (Dkt. No. 156.)

Plaintiffs point to several factors indicating that emails were lost – such as the mysterious gap in emails about Lindsay Williams between 2017, the directions from Microsoft Outlook regarding the storage of emails, and the failure by the IT Director to find any emails about Lindsay Williams in the backup files.  (Dkt. No. 158 at page 7.)  Given the factual evidence Plaintiffs provide, compared to the complete lack of factual evidence from Defendants – who are in the best position to provide a declaration or other explanation for their email storage system – the Court finds that Defendants cannot recover the emails.

Defendants also argue, with no citation to evidence, that the text messages that individual Defendants deleted were not irretrievably lost.  Defendants ignore the fact that Plaintiffs only became aware of the deletion of text messages after discovery closed and that Defendants were not able to provide these text messages even though they were relevant and requested in the litigation. Defendants imply that Plaintiffs could somehow obtain the deleted text messages from other sources without explaining how they could do so and how they could do so after the discovery cutoff.  Plaintiffs here were diligent in pursuing discovery – through motions, additional discovery specifically authorized by the undersigned after a motion after the discovery deadline, and through lengthy communications with Defendants' counsel.  They need not take further action to show that they cannot recover deleted text messages.

Fourth, Plaintiffs have suffered prejudice.  Although Defendants did initially, reluctantly, produce the text message chain, which was supplied by a non-Defendant, there is a strong likelihood that there are other text messages regarding Lindsay Williams that they can never recover.  Any moving party is at a disadvantage to show prejudice because a moving party who seeks evidence cannot prove that relevant evidence existed but was destroyed.  *See, e.g., Apple, Inc. v. Samsung Elecs. Co. Ltd*., 888 F.Supp.2d 976, 993 (N.D. Cal. 2012) ("though neither Apple nor the Court may ever know the contents of any destroyed Samsung emails, the fact that the emails of key Samsung witnesses were among those destroyed permits the reasonable inference that Apple was prejudiced by Samsung's spoliation.")  Here, there is a stronger reason to believe that the destroyed evidence contained relevant information that Plaintiffs cannot obtain:  because Defendants' counsel falsely stated, and Castellanos, White, and Martinez falsely testified, that the

1    individual Defendants did not use their cell phones to discuss work, there is an even stronger

2    inference that there were other text messages that are relevant to Lindsay Williams.  Here, the text

3    message chain that was produced goes to some of the key issues in this case, such as the individual

4    Defendants' knowledge of Lindsay Williams' address and their animus against Plaintiffs.

5         Finally, the undersigned finds that Defendants acted with intent to deprive Plaintiffs of the

6    destroyed evidence.  Again, the key fact here is that, on February 14, 2019, the District Court

7    explicitly warned Defendants to put in place policies to preserve evidence and to stop any policy

8    of destruction, but Defendants did not do so.  Intent cannot be clearer when the District Court gave

9    such an explicit, detailed explanation of Defendants' obligations and when Defendants blatantly

10   defied that specific order.  But even without that warning, Defendants' failure to comply with the

11   basic rules requiring that they preserve evidence after the claim shows their intent.

12        Plaintiffs seek an adverse inference instruction to the jury as follows:

13            Defendants have failed to preserve evidence for Plaintiffs' use in this
              case after their duty to preserve arose, including relevant emails and
14            text messages between the Deputies about the Incidents in question.
              You may, but need not, presume that the deleted text messages and
15            email were favorable to Plaintiffs.  Whether Defendants' failure to
              preserve is important to you in reaching a verdict in this case, and
16            what that failure signifies, is for you to decide.

17   (Dkt. No. 146.)  Such an instruction is appropriate here because Defendants acted, at best, in a

18   grossly negligent behavior in failing to preserve ESI in any way and in actively deleting emails

19   and text messages.  The undersigned, though, finds that Defendants acted with intent, given the

20   clear warnings and complete failure to preserve ESI.  The District Court on February 14, 2019,

21   specifically warned Defendants that the failure to follow the instructions about preservation of

22   evidence would lead to an adverse inference instruction to the jury.  The instruction that Plaintiffs

23   seek is the mildest version of an adverse inference instruction and is more than justified here.  The

24   undersigned RECOMMENDS that the District Court give this adverse inference instruction at

25   trial.

26        **2.     Inherent Authority**

27        Plaintiffs also seek sanctions under the inherent authority of the federal court.  A federal

28   trial court has the inherent authority "to make appropriate evidentiary rulings in response to the

11

destruction or spoliation of relevant evidence," and that authority includes the power to give an adverse inference instruction to the jury and to imposed monetary sanctions for bad faith. *Apple*, 888 F.Supp.2d at 985 (internal citation omitted); *Primus Auto.Fin.Servs., Inc. v. Batarase*, 115 F.3d 644, 648 (9th Cir. 1997).  The standards for sanctions for spoliation under this standard are similar to the standards under Rule 37.  Specifically, sanctions are appropriate where the defendants "had an obligation to preserve evidence at the time it was destroyed," "the records were destroyed with a culpable state of mind," and the evidence was relevant to the litigation "such that a reasonable trier of fact could find that it would support a claim or defense." *Apple*, 888 F.Supp.2d at 989-990, 996-997.

Here, as noted above, Defendants had an obligation to preserve the evidence at the time the records were destroyed.  Second, Defendants had a culpable state of mind because the first time any type of litigation hold was created was March 9, 2020, long after the litigation began.  And, although not required, the District Court explicitly warned Defendants that they had an obligation to stop all policies for destruction of emails and text messages and yet the litigation hold did not occur until over a year after that stark warning.  Finally, the evidence was relevant.  *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 960 (9th Cir. 2006) (noting presumption of relevance of spoliated evidence because, by definition, courts and parties cannot determine contents of documents that no longer exist).  Sanctions are thus warranted under the Court's inherent authority.  As noted above, the adverse inference instruction is an appropriate sanction.

### 3.    Rule 26(g) Sanctions against Attorney

Additionally, Plaintiffs seek sanctions against Defendants' counsel for certifying under Rule 26(g) that the responses are "not interposed for any improper purpose, such as to . . . cause unnecessary delay, or needlessly increase the cost of litigation."  Plaintiffs argue that Defendants' counsel failed to take adequate steps to preserve documents, failed to monitor Defendants' searches for documents, and failed to conduct adequate searches for documents.  Defendants' counsel argues that any sanctions sought under Rule 26(g) are duplicative of other sanctions and therefore unnecessary and that Plaintiffs fail to identify which specific discovery response violated Rule 26(g).

The facts presented for this motion do not make clear who bears the fault for the spoliation of evidence. For example, it is possible that Defendants lied to their own lawyer about measures they took to preserve evidence and to search for evidence. In that case, Defendants' counsel might be able to argue that counsel did not violate Rule 26(g). Defendants' counsel has not provided information regarding any attempts counsel made specifically to preserve and collect evidence, and Defendants' counsel argues that doing so would violate the attorney-client privilege. The undersigned finds at this time that such a process would violate the attorney-client privilege, and Defendants have not expressly waived their attorney-client privilege. Therefore, the sanctions assessed below will assessed against Defendants only at this time. If Defendants wish to shift the burden of sanctions to their counsel, they must obtain independent counsel to move to shift sanctions; Defendants' counsel must obtain independent counsel for that motion; and Defendants' counsel may wish to move to withdraw as counsel in this matter.

**D.     Relief Sought:  Attorneys' Fees.**

Plaintiffs seek sanctions in the form of attorneys' fees in the amount of $105,949.98. Attorneys' fees are warranted both under Rule 37(e) and the Court's inherent authority, given the finding above that Defendants acted with intent to deprive Plaintiffs of evidence by failing to put in place methods to preserve evidence. Plaintiffs provided evidence of their fees and costs to date but obviously could not include fees and costs for the reply. The Court GRANTS leave to Plaintiffs to file an additional claim for fees and costs for the reply. Plaintiffs must file their supplemental papers for those additional fees and costs by July 17, 2020, and Defendants may respond only to that issue by July 31, 2020.

<strong>CONCLUSION</strong>

The Court GRANTS the motion for sanctions, RECOMMENDS that the District Court

///

///

///

///

///

provide the adverse inference instruction to the jury, and GRANTS the motion for attorneys' fees

and costs in an amount to be determined after final submissions.

**IT IS SO ORDERED**.

Dated: July 3, 2020

_____

SALLIE KIM
United States Magistrate Judge

United States District Court
Northern District of California