UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BEVERLY JOHN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF LAKE, et al.,<br><br>Defendants. | Case No. 18-cv-06935-WHA   (SK)<br><br>**AMENDED ORDER REGARDING MOTION FOR SANCTIONS AND REGARDING SPECIFIC AMOUNT OF ATTORNEYS' FEES**<br><br>Regarding Docket No. 146 |

On July 3, 2020, the undersigned granted Plaintiffs' motion for sanctions and attorneys' fees and costs but deferred the determination of the specific amount to allow further briefing regarding the issue of attorneys' fees and costs. (Dkt. No. 159.) That briefing is now complete. This Order amends and supersedes the Order of July 3, 2020.

Plaintiffs seek an order finding that Defendants and their counsel spoliated evidence and request that the Court give the jury an instruction that Defendants breached their obligations to provide discovery and that the jury can consider this fact in reaching a verdict (the "adverse inference" instruction). Plaintiffs also seek monetary sanctions for the attorneys' fees and costs expended in bringing this motion and in seeking additional discovery to file this motion. For the reasons set forth below, the Court finds that Defendants breached their obligations to provide discovery and that monetary sanctions are appropriate. The Court GRANTS Plaintiffs' motion for monetary sanctions in the amount of the attorneys' fees and costs they incurred in moving to compel further discovery, to meet and confer and take additional discovery to determine the extent of Defendants' failures, and to brief and argue the motion for sanctions. Plaintiffs seek an amount

of $121,154.98 which represents only a portion of the fees that were actually incurred, and the undersigned awards the requested amount in full. The Court also RECOMMENDS that the District Court provide an adverse inference instruction to the jury at trial.

**BACKGROUND**

This case arises out of two searches in November and December 2017 for Lindsay Williams, who was on probation and the subject of an arrest warrant, at residences inhabited by his family members (Beverly John, Jacqueline John, Lyann Williams, and Mario Williams (now deceased)). In general, Plaintiffs contend that Defendants searched their residences unlawfully and that they used excessive force in those searches. The dispute about the legality of the searches centers on whether Lindsay Williams lived at the residences that were searched in November and December 2017 and whether Defendants had reason to believe that he lived there.

On May 15, 2018, Plaintiffs Beverly John and Jacqueline John filed an administrative claim with the County of Lake ("Lake County"). (Dkt. No. 146-2 (Declaration of Angela L. Dunning ("Dunning Decl."), Ex. 1).) That claim referred specifically to law enforcement officers Antonio Castellanos and Cody White, later named as individual defendants in this case. (Dkt. No. 146-2 (Dunning Decl. Ex. 1); Dkt. No. 1 (Complaint).) On June 8, 2018, Plaintiffs Lyann Williams and Mario Williams filed an administrative claim with Lake County for damages for the allegedly illegal search of their home in December 2017. (Dkt. No. 146-2 (Dunning Decl. Ex. 2).) That claim specifically referred to Castellanos. (*Id.* (Ex. 2).) Lake County rejected those claims. (*Id.* ( Ex. 3).)

On November 15, 2018, Plaintiffs filed this suit. (Dkt. No. 1.) Plaintiffs named as defendants Lake County, Castellanos, White, the City of Lakeport, and additional law enforcement officers Joseph Eastham and Mark Steele. (*Id.*) Plaintiffs made the following claims: (1) violation of 42 U.S.C. § 1983 for unreasonable search in violation of the Fourth Amendment to the U.S. Constitution, (2) violation of 42 U.S.C. § 1983 for invasion of privacy in violation of the Fourth, Fifth and Fourteenth Amendments to the U.S. Constitution, (3) violation of 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth Amendment to the U.S. Constitution, (4) violation of the California Constitution, Article 1, Section 13 – unreasonable search, (5) violation of the

California Constitution, Article 1, Section 1 – invasion of privacy, (6) violation of the California Civil Code § 52.1 (Bane Act), (7) battery under California common law, (8) assault under California common law, (9) intentional infliction of emotional distress, (10) negligent infliction of emotional distress, and (11) negligence. (*Id.*)

On February 7, 2019, Plaintiffs served their first request for production of documents on Lake County. (Dkt. No. 146-1 (Dunning Decl. ¶ 15).) Plaintiffs requested: "All DOCUMENTS and COMMUNICATIONS CONCERNING Lindsay Williams." (Dkt. No. 146-2 (Dunning Decl. Ex. 10).)

On February 14, 2019, the District Court, in a hearing, addressed Plaintiffs' concerns about Defendants' unwillingness to confirm that they were preserving evidence pursuant to a litigation hold. (Dkt. No. 134.) The District Court stated:

> Anything that relates directly to the case, like emails, text messages, voicemails, memos, handwritten notes, they should be preserved. And any document-destruction program should be interdicted in order to stop it. *And if you fail to do that, on either side, then very likely the jury will be told* . . . [Y]ou have a duty, as the lawyers, to tell your clients that. So, please do so.

(*Id.* at 18:10-19) (emphasis added.)

The District Court's Standing Order, dated February 12, 2018, also provides:

> For document requests, the producing party remains obligated to search all places with a reasonable chance of having responsive documents, including ESI [electronically stored information] and hard copies. If the responding side has already done some homework and located responsive documents, then they must be produced (unless truly privileged and logged as such). Both ESI and hard copy files must be searched. Search of hard copy files cannot be skipped on the theory that the electronic files will duplicate everything in the hard copy files, for experience shows they never quite do.

On February 22, 2019, Plaintiffs issued to Castellanos a request for production of documents in which Plaintiffs sought emails and text messages regarding the November 2017 and December 2017 incidents by requesting "[a]ll DOCUMENTS, INCLUDING written records, video and audio recordings, incident reports, notes, dispatch calls or records, text messages, e-mails or other electronic messages, phone records, and voicemails, and COMMUNICATIONS, INCLUDING with the CITY, CONCERNING" the November 2017 and December 2017

3

1  incidents. (Dkt. No. 146-2 (Dunning Decl. Ex. 6).) Plaintiffs also served a request for production
2  of documents on White (Dkt. No. 146-1 (Dunning Decl. ¶ 15)) but did not provide a copy for this
3  motion. Defendants Castellanos and White responded that they had no phone records. (Dkt. No.
4  146-2 (Dunning Decl. Ex. 11).) On September 3, 2019, Martinez responded to a request for all
5  documents, including, among other things, "text messages, e-mails and other electronic messages,
6  phone records, and voicemails" stating that he had nothing responsive and that he would produce
7  any responsive emails. (*Id.* (Ex. 15).)

8  Throughout the spring and summer of 2019, Plaintiffs met and conferred with Defendants
9  about the production of electronically stored information. (*Id.* (Exs. 8, 9, 11, 12).) Defendants
10 represented, among other things, that the individual Defendants did not use their cell phones to
11 communicate about the November 2017 and December 2017 incidents and that there were no
12 responsive phone records. (*Id.* (Ex. 11).)

13 After motion practice, Plaintiffs filed a First Amended Complaint adding Jose Martinez as
14 a defendant. (Dkt. No. 53.) Both the original Complaint and the First Amended Complaint
15 alleged that Lake County was liable for the acts of the individual defendants in violating Plaintiffs'
16 Constitutional rights because of a failure to train them adequately, pursuant to *Monell v.*
17 *Department of Social Services of City of New York*, 436 U.S. 658 (1978).

18 On August 7, 2019, Martinez testified in deposition that no one had asked him to preserve
19 documents in connection with the litigation and that he could not remember communicating via
20 text message with anyone about the November 2017 and December 2017 incidents. (Dkt. No.
21 146-2 (Dunning Decl. Ex. 13).)

22 On August 8, 2019, White testified that he never communicated via text message with
23 Castellanos or Martinez about Lindsay Williams. (*Id.* (Ex. 14).)

24 On November 21, 2019, Castellanos testified in deposition that, with one exception he did
25 not communicate via text message with anyone – law enforcement or otherwise – about Lindsay
26 Williams. (*Id.* (Ex. 18).)

27 On December 3, 2019, Luke Bingham, Lake County's witness pursuant to Federal Rule of
28 Civil Procedure 30(b)(6), testified that Lake County had not taken steps to preserve emails in

4

connection with the litigation. (*Id.* (Ex. 19).)

On December 3, 2019, factual discovery for this case closed, per the District Court's Order. (Dkt. No. 39.) Defendants had not produced any text messages about the November 2017 and December 2017 incidents. (Dkt. No. 146-1 (Dunning Decl. ¶ 33).)

On December 9, 2019, Plaintiffs filed a letter brief in support of a motion to compel documents in which Plaintiffs sought electronically stored information from the individual defendants' cell phones and from Lake County's electronic mail server. (Dkt. No. 96.) The District Court set a hearing on that motion for December 18, 2019 and ordered the parties to meet and confer for three hours in the Court's jury room before that hearing. (Dkt. No. 97.)

On December 18, 2019, at a mandatory session to meet and confer, Defendants' counsel informed Plaintiffs that he had a chain of text messages between and among individual Defendants and that Defendants had withheld those messages on the grounds of relevance. (Dkt. No. 146-1 (Dunning Decl. ¶ 35).) The District Court reviewed the text message chain in camera and ordered that Defendants produce that document to Plaintiffs. (Dkt. No. 146-2 (Dunning Decl. Ex. 20).)

The District Court allowed Plaintiffs only to take additional discovery until February 28, 2020 and referred all discovery matters to the undersigned. (Dkt Nos. 104, 105.) Defendants then produced the text message chain to Plaintiffs on December 19, 2019. (Dkt. No. 146-1 (Dunning Decl. ¶ 37); Dkt. No. 146-2 (Dunning Decl. Ex. 21).) Those text messages showed a discussion between and among some of the individual Defendants and other law enforcement officers regarding the search for Lindsay Williams – the subject of this litigation, and the text message chain was clearly responsive to the document requests listed above, which some of the individual Defendants had denied existed. (Dkt. No. 146-2 (Dunning Decl. Ex. 21).) On January 30, 2020, Defendants then produced a new version of the text message chain with additional messages also relevant to this matter and responsive to the document requests listed above. (*Id.* (Ex. 23).) That text message chain contained the following statements:

> Comment: "Lindsay Williams is about to have a parole warrant for beating his baby momma."
>
> Comment by Castellanos: "Let's go conduct another search for him."

5

> Comment by Martinez: "He beat up his baby momma stole her phone money and car. One of your sergeants went and took a report this afternoon[.] Hey [sic] supposed be [sic] staying at his moms [sic] house on Soto Bay Road right by Mission rancheria but I don't know the address. You guys have it in your system because he's been arrested there before[.] He's *** on soda bay[.]"
>
> Comment: "Assumed after we got the report that Lindsay was in there with him. Driving a 90s Yota pickup."
>
> Comments by Martinez: "I doubt that family would decline a search knowing their doors would get kicked in."
>
> Comment by Martinez: "I would kick down another door at that house without hesitation."
>
> Comment by Martinez: "His parole agent told us that's where he may be at. Just give it some time. He'll be back if he actually did leave to Hopland."

(*Id.* (Exs. 21, 23).) Officers other than the individual Defendants provided this text message chain. (Dkt. No. 156 (Defendants' Opp. to Mot. for Sanctions) at pp. 7 n.2 and 13.)

Counsel to Castellanos and Martinez stated that Castellanos and Martinez had deleted the text chain from their cell phones and that there had been no previous attempt to create an image of the cell phones for discovery. (Dkt. No. 146-1 (Dunning Decl. ¶ 40).) Counsel also confirmed that counsel had not searched the cell phones for responsive messages and instead had relied upon the individual Defendants to search their own cell phones. (Dkt. No. 146-1 (Dunning Decl. ¶ 40).)

On February 11, 2020, the parties filed a joint letter brief for the undersigned. (Dkt. No. 114.) In that letter brief, Plaintiffs again sought text messages and other electronically stored information that Defendants had not produced. (Dkt. No. 114.) Plaintiffs specifically requested an order "requiring counsel for Defendants to collect, search, and produce all responsive text messages by a date certain well in advance of Plaintiffs' February 28, 2020 discovery cut off. To the extent [electronically stored information] has been destroyed, Plaintiffs request an explanation, and that the Court award appropriate sanctions, in its discretion." (*Id.*)

After Plaintiffs filed the February 11, 2020 letter brief but before the Court issued a decision on that issue, Defendants produced additional electronically stored information to Plaintiffs, and Plaintiffs took the deposition for three witnesses who had provided additional electronically stored information, on February 25 and 26, 2020. (Dkt. No. 146-1 (Dunning Decl. ¶

52-53).) Two of those witnesses were deposed for a second day but only on the targeted issue of the newly discovered problems with electronically stored information, and one was deposed for the first time but only on the same limited issue of Defendants' preservation or spoliation of evidence. *(Id.)*

On February 25, 2020, Castellanos testified in his deposition that he deleted emails when his mailbox was full, after he received a message that his mailbox was full, and that he did not review them when he did so. (Dkt. No. 146-2 (Dunning Decl. Ex. 24).) He searched his text messages for responsive documents but did not review them all, did not run any search terms for his search of his text messages, and did not provide his cell phone for imaging or searching to any other person. *(Id.)*

On February 26, 2020, Martinez testified in his second deposition that he learned that he was required to preserve documents related to the November 2017 incident but not the December 2017 incident. (Dkt. No. 146-2, Ex. 25.) He also testified that he had continued his regular practice of deleting text messages even after he had been informed of the need to collect documents. *(Id.)*

On February 26, 2020, Plaintiffs took the deposition of non-defendant Deputy Nathaniel Newton, because he was the source of the text chain message. (Dkt. No. 146-1 (Dunning Decl. ¶¶ 39, 53).)

On March 2, 2020, the undersigned held a hearing for the second letter brief (motion to compel), and at that hearing, the parties agreed to conduct a deposition of the person who performed the search of the emails for Lake County, by a date certain. (Dkt. No. 121.) In, addition, the undersigned ordered the following: (1) that Defendants search mobile phones belonging to individual Defendants, using certain procedures, (2) that the deposition of the person who performed the searches take place by a date certain, (3) that Plaintiffs could file a motion for sanctions, and (4) that the parties meet and confer regarding a schedule for Plaintiffs' motion for sanctions if the discovery showed that responsive documents had been spoliated. (Dkt. No. 123.)

On March 10, 2020, Plaintiffs took the deposition of Shane French, Lake County's Director of Information Technology, who testified that the first time he had been asked to put a

1  litigation hold on emails for Castellanos, White and Martinez was on March 9, 2020, the day
2  before the deposition, that he had never been asked to put a litigation hold on any other
3  employee's records or depository, and that, as Director of Information Technology, he would
4  know if such a litigation hold had been made. (Dkt. No. 146-2 (Dunning Decl. Ex. 26).)
5       On March 23, 2020 and March 27, 2020, Defendants also produced some additional
6  documents after the renewed search. (Dkt. No. 146-1 (Dunning Decl. ¶¶ 46-47).) Some of those
7  documents were redacted, but Defendants did not produce the unredacted versions or a log of the
8  redactions. (*Id.* (¶ 48).)
9       On March 27, 2020, the District Court denied in part and granted in part Defendants'
10 motion for summary judgment, and on May 1, 2020, the District Court denied in part and granted
11 in part the competing motions for reconsideration. (Dkt. Nos. 129, 144.) As a result of the
12 motions and previous settlements, only some of the defendants and some of the claims remain.
13      On April 22, 2020, the undersigned ordered the parties to meet and confer regarding the
14 schedule for Plaintiffs' motion for spoliation. (Dkt. No. 138.)
15      The record shows a long history of meeting and conferring over these issues from the time
16 of Defendants' initial responses to the first request for production of documents. (Dkt. No. 146-1
17 (Dunning Decl. ¶¶ 16, 18-23, 27-28, 31, 35, 37, 38, 40, 48); Dkt. No. 146-2 (Dunning Decl. Exs.
18 8-12, 16-17, 22, 27).) The parties were required to meet and confer before bringing disputes about
19 discovery to the Court. (Dkt. No. 107; Standing Order of District Court, dated February 12, 2018,
20 ¶ 34.)
21      After the limited discovery – as ordered by the Court – had concluded, Plaintiffs
22 concluded that, even though Defendants had produced some additional electronically stored
23 information after the initial motion to compel, Defendants had not preserved evidence as required,
24 and Plaintiffs thus filed a motion for sanctions. (Dkt. No. 146.)

**DISCUSSION**

**A.    Plaintiffs' Motion does not Violate Due Process.**

27      Defendants argue that Plaintiffs' motion for spoliation violates due process. The argument
28 makes no sense, as Plaintiffs clearly identified the underlying law and the sanctions that they seek

8

in a detailed, thorough brief of 25 pages.

## B. Plaintiffs' Motion is Timely.

Defendants argue that Plaintiffs' motion is not timely because Plaintiffs filed the motion more than seven days after the close of discovery in violation of Northern District Civil Local Rule 37-3. As noted above, Plaintiffs were given leave to file this motion according to a timetable set forth in detailed orders. (Dkt. Nos. 123, 138.) Defendants' argument thus is not convincing.

## C. Sanctions Are Warranted Under Both Federal Rule of Civil Procedure 37 and the Court's Inherent Authority.

Plaintiffs seek sanctions under both Federal Rule of Civil Procedure 37 and the Court's inherent authority because of the destruction of electronically stored information in the form of text messages and emails. Sanctions are warranted under both standards.

### 1. Federal Rule of Civil Procedure 37.

Federal Rule of Civil Procedure 37(e) sets forth three criteria to determine whether spoliation of electronically stored information has occurred: (1) the electronically stored information "should have been preserved in the anticipation or conduct of litigation"; (2) the electronically stored information "is lost because a party failed to take reasonable steps to preserve it"; and (3) the electronically stored information "cannot be restored or replaced through additional discovery." Fed. R. Civ. P. 37(e). If these criteria are met and the court finds that there is "prejudice to another party from [the loss] of the" electronically stored information, Rule 37(e)(1) instructs a court to "order measures no greater than necessary to cure the prejudice." Fed. R. Civ. P. 37(e)(1).

However, if electronically stored information is destroyed and a party "acted with the intent to deprive another party of the information's use in the litigation," Rule 37(e)(2) authorizes the imposition of more severe sanctions, including a jury instruction of adverse inference. Fed. R. Civ. P. 37(e)(2)(B) (a court may "instruct the jury that it may or must presume the [spoliated] information was unfavorable to the party"). Rule 37(e) does not define "intent." However, the 2015 Advisory Committee Notes to the amendment of Rule 37(e) advise that "[n]egligent or even grossly negligent behavior" is insufficient to show "intent." 2015 Advisory Comm. Notes.

9

1    Accordingly, courts have found that a party's conduct satisfies Rule 37(e)(2)'s intent requirement
2    where the evidence shows or it is reasonable to infer that the party purposefully destroyed
3    evidence to avoid its obligations in litigation. *See*, *e.g.*, *Porter v. City & Cty. of San Francisco*,
4    2018 WL 4215602, *3 (N.D. Cal. Sept. 5, 2018) (citing cases).

5    Applying Rule 37(e), the Court finds that all three criteria are satisfied and that spoliation
6    has occurred. First, Defendants had the obligation to preserve evidence as soon as they received
7    notice of the administrative claim, which Plaintiffs mailed on May 15, 2018. *In re Napster, Inc.*
8    *Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (duty to preserve evidence
9    reasonably related to claim arises at time litigant learns of potential claim); *see also Porter*, 2018
10   WL 4215602, at *3 (duty to preserve arose when plaintiff served administrative claim under
11   California Government Code). Even if Defendants were not on notice at that time, they clearly
12   were at the time of the filing of the Complaint on November 15, 2018. *Stevenson v. City and Cty.*
13   *of San Francisco*, 2015 WL 6177363, at *4 (N.D. Cal. Oct. 21, 2015). The District Court's
14   Standing Order expressly spells out the requirement to preserve electronically stored information.
15   Defendants had an even clearer obligation to search for emails and text messages when Plaintiffs
16   served their requests for production of documents, explicitly asking for emails and text messages,
17   in February 2019, and when the District Court warned Defendants on February 14, 2019, that they
18   had a duty to preserve electronically stored information (emails and text messages included) and
19   that they had a duty to "interdict" any usual policy of destruction.

20   Second, the electronically stored information was lost because Defendants failed to take
21   steps to preserve it. With regard to the email messages, the Director of Information Technology
22   for Lake County testified that he was not aware of a litigation hold and that he never conducted a
23   search of the email server, and individual Defendants testified that they deleted emails and text
24   messages after this litigation began.

25   With regard to text messages, the individual Defendants testified that they searched only
26   cursorily through their text messages for responsive messages and did not produce the key text
27   message chain described above that counsel belatedly provided to the District Court in December
28   2019, and there was no attempt to image their cell phones or run a search across all their text

1    messages for responsive messages.  The individual Defendants also deleted text messages.  Worse,
2    the individual Defendants testified that they did not use their cell phones to discuss work when
3    they clearly did in coordinating with other law enforcement officers to arrest Lindsay Williams, as
4    the text message chain supplied by a non-Defendant later showed.

5    Third, the electronically stored information cannot be restored through other means.  There
6    is no showing by Defendants that they can recover deleted email messages or text messages.
7    Plaintiffs have met and conferred with Defendants about these issues at length with no solution,
8    and Plaintiffs even took additional discovery, with leave, after the discovery deadline, to
9    determine if Defendants could recapture destroyed messages.  With regard to emails, Defendants
10   argue with no citation to evidence that, although individual Defendants deleted their emails, there
11   is no evidence that the system completely purged those emails.  Defendants imply, again with no
12   citation to evidence, that the emails were completely destroyed only if they were "double deleted."
13   (Dkt. No. 156.)  Plaintiffs point to several factors indicating that emails were lost – such as the
14   mysterious gap in emails about Lindsay Williams from 2017, the directions from Microsoft
15   Outlook regarding the storage of emails, and the failure by French, Lake County's Director of
16   Information Technology, to find any emails about Lindsay Williams in the backup files.  (Dkt. No.
17   158 at p. 7.)  Given the factual evidence Plaintiffs provide, compared to the complete lack of
18   factual evidence from Defendants – who are in the best position to provide a declaration or other
19   explanation for their email storage system – the Court finds that Defendants cannot recover the
20   emails.

21   Defendants also argue, with no citation to evidence, that the text messages that individual
22   Defendants deleted were not irretrievably lost.  Defendants ignore the fact that Plaintiffs only
23   became aware of the deletion of text messages after discovery closed and that Defendants were not
24   able to provide these text messages even though they were relevant and requested in the litigation.
25   Defendants imply that Plaintiffs could somehow obtain the deleted text messages from other
26   sources without explaining how they could do so or how they could do so after the discovery
27   cutoff.  Plaintiffs here were diligent in pursuing discovery – through motions, additional discovery
28   specifically authorized by the undersigned upon a motion after the discovery deadline, and through

11

1    lengthy communications with Defendants' counsel.  They need not take further action to show that
2    they cannot recover deleted text messages.

3          Fourth, Plaintiffs have suffered prejudice.  Although Defendants did initially, reluctantly,
4    produce the text message chain, which was supplied by a non-Defendant, there is a strong
5    likelihood that there are other text messages regarding Lindsay Williams that they can never
6    recover.  Any moving party is at a disadvantage to show prejudice because a moving party who
7    seeks evidence cannot prove that relevant evidence existed but was destroyed.  *See*, *e.g.*, *Apple,*
8    *Inc. v. Samsung Elecs. Co. Ltd.*, 888 F. Supp. 2d 976, 993 (N.D. Cal. 2012) ("though neither
9    Apple nor the Court may ever know the contents of any destroyed Samsung emails, the fact that
10   the emails of key Samsung witnesses were among those destroyed permits the reasonable
11   inference that Apple was prejudiced by Samsung's spoliation.")  Here, there is a stronger reason to
12   believe that the destroyed evidence contained relevant information that Plaintiffs cannot obtain:
13   because Defendants' counsel falsely stated, and Castellanos, White, and Martinez falsely testified,
14   that the individual Defendants did not use their cell phones to discuss work, there is an even
15   stronger inference that there were other text messages that are relevant to Lindsay Williams.  Here,
16   the text message chain that was produced goes to some of the key issues in this case, such as the
17   individual Defendants' knowledge of Lindsay Williams' address and their animus against
18   Plaintiffs.

19         Finally, the undersigned finds that Defendants acted with intent to deprive Plaintiffs of the
20   destroyed evidence.  Again, the key fact here is that, on February 14, 2019, the District Court
21   explicitly warned Defendants to put in place policies to preserve evidence and to stop any policy
22   of destruction, but Defendants did not do so.  Intent cannot be clearer when the District Court gave
23   such an explicit, detailed explanation of Defendants' obligations and when Defendants blatantly
24   defied that specific order.  But even without that warning, Defendants' failure to comply with the
25   basic rules requiring that they preserve evidence after notice of the claim shows their intent.

26         Plaintiffs seek an adverse inference instruction to the jury as follows:

27              Defendants have failed to preserve evidence for Plaintiffs' use in this
            case after their duty to preserve arose, including relevant emails and
28             text messages between the Deputies about the Incidents in question.

> You may, but need not, presume that the deleted text messages and email were favorable to Plaintiffs. Whether Defendants' failure to preserve is important to you in reaching a verdict in this case, and what that failure signifies, is for you to decide.

(Dkt. No. 146.) Such an instruction is appropriate here because Defendants acted, at best, in a grossly negligent behavior in failing to preserve electronically stored information in any way and in actively deleting emails and text messages. The undersigned, though, finds that Defendants acted with intent, given the clear warnings and complete failure to preserve electronically stored information. The District Court on February 14, 2019, specifically warned Defendants that the failure to follow the instructions about preservation of evidence would lead to an adverse inference instruction to the jury. The instruction that Plaintiffs seek is the mildest version of an adverse inference instruction and is more than justified here. The undersigned RECOMMENDS that the District Court give this adverse inference instruction at trial.

### 2.   Inherent Authority.

Plaintiffs also seek sanctions under the inherent authority of the federal court. A federal trial court has the inherent authority "to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence," and that authority includes the power to give an adverse inference instruction to the jury and to impose monetary sanctions for bad faith. *Apple*, 888 F. Supp. 2d at 985 (internal citation omitted); *Primus Auto. Fin. Servs., Inc. v. Batarase*, 115 F.3d 644, 648 (9th Cir. 1997). The standards for sanctions for spoliation under this standard are similar to the standards under Rule 37. Specifically, sanctions are appropriate where the defendants "had an obligation to preserve evidence at the time it was destroyed," "the records were destroyed with a culpable state of mind," and the evidence was relevant to the litigation "such that a reasonable trier of fact could find that it would support a claim or defense." *Apple*, 888 F. Supp. 2d at 989-990, 996-997.

Here, as noted above, Defendants had an obligation to preserve the evidence at the time the records were destroyed; Defendants had a culpable state of mind; and the evidence was relevant. *See Leon v. IDX Sys. Corp.*, 464 F.3d 951, 960 (9th Cir. 2006) (noting presumption of relevance of spoliated evidence because, by definition, courts and parties cannot determine contents of documents that no longer exist). Sanctions are thus warranted under the Court's inherent

authority. As noted above, the adverse inference instruction is an appropriate sanction. In addition, an award of attorneys' fees and costs is also warranted.

### 3. Rule 26(g) Sanctions against Counsel.

Additionally, Plaintiffs seek sanctions against Defendants' counsel for certifying under Rule 26(g) that the responses are "not interposed for any improper purpose, such as to . . . cause unnecessary delay, or needlessly increase the cost of litigation." Plaintiffs argue that Defendants' counsel failed to take adequate steps to preserve documents, failed to monitor Defendants' searches for documents, and failed to conduct adequate searches for documents. Defendants' counsel argues that any sanctions sought under Rule 26(g) are duplicative of other sanctions and therefore unnecessary and that Plaintiffs fail to identify which specific discovery response violated Rule 26(g).

The facts presented for this motion do not make clear who bears the fault for the spoliation of evidence. For example, it is possible that Defendants lied to their own lawyer about measures they took to preserve evidence and to search for evidence. In that case, Defendants' counsel might be able to argue that counsel did not violate Rule 26(g). Defendants' counsel has not provided information regarding any attempts counsel made specifically to preserve and collect evidence, and Defendants' counsel argues that doing so would violate the attorney-client privilege. The undersigned finds at this time that such a process would violate the attorney-client privilege, and Defendants have not expressly waived their attorney-client privilege. Therefore, the sanctions assessed below will assessed against Defendants only at this time. If Defendants wish to shift the burden of sanctions to their counsel, they must obtain independent counsel to move to shift sanctions; Defendants' counsel must obtain independent counsel for that motion; and Defendants' counsel may wish to move to withdraw as counsel in this matter.

### D. Relief Sought: Attorneys' Fees.

Plaintiffs seek sanctions in the form of attorneys' fees in the amount of $121,154.98. (Dkt. No. 146-1 (Dunning Decl. ¶¶57-58); Dkt. No. 160 (Second Supplemental Dunning Decl. ¶ 3).) Attorneys' fees are warranted both under Rule 37(e) and the Court's inherent authority, given the finding above that Defendants acted with intent to deprive Plaintiffs of evidence by failing to put

1  in place methods to preserve evidence.

### 1.     Specific Fees and Costs Sought.

Plaintiffs seek attorneys' fees and costs for the motion to compel, actions taken for additional discovery, meeting and conferring with Defendants, and the motion for sanctions. Plaintiffs have specifically excluded from their request any attorneys' fees and costs incurred by anyone other than three lawyers in this case, even though other lawyers and a paralegal worked on the issues. (Dkt. No. 146-1 (Dunning Decl. ¶ 8).)

Pursuant to the District Court's exhortation that lawyers with fewer than six years of experience participate in meaningful aspects of litigation, the bulk of the work at issue was performed by Jessie Simpson LaGoy, an attorney with fewer than six years of experience (2015 graduate of law school). (*Id.* (¶ 4).) To a lesser degree, Plaintiffs seek attorneys' fees for Kristine Forderer (a 2011 graduate of law school) and Angela Dunning (a 2000 graduate of law school). Plaintiffs do not ask for any fees incurred by three other lawyers and a senior paralegal. (*Id.* (¶ 4).)

The rates Plaintiffs seek are as follows:

- Jessie Simpson LaGoy - $755 in 2019 and $875 in 2020;
- Kristine Forderer - $955 in 2019 and $1,010 in 2020; and
- Angela Dunning - $980 in 2019 and $1,040 in 2020.

(*Id.* (¶ 3).)

Plaintiffs provide a detailed breakdown of the hours spent on various tasks, beginning with the initial motion to compel that led to the order granting sanctions. (Dkt. No. 146-1 (Dunning Decl. ¶¶ 49-58); Dkt. No. 160 (Second Supplemental Dunning Decl. ¶ 3).) For each task, Plaintiffs seek fees for only one or two of the three attorneys named above (Simpson LaGoy, Forderer, and Dunning), even if one or more of the three attorneys named above worked on a particular motion. In other words, for each task, Plaintiffs seek fees for only a small portion of the fees actually incurred because they seek fees without considering all of the fees incurred by Simpson LaGoy, Forderer, and Dunning and do not seek fees incurred by other unnamed associate attorneys and paralegals. In one instance, Plaintiffs ask for fees only for one attorney's work and reduce the amount of time by more than half. (Dkt. No. 146-1 (Dunning Decl. ¶ 54).) In other

15

instances, Plaintiffs seek approximately one-third of the fees incurred even by Dunning, Forderer, and Simpson LaGoy. (Dkt. No. 146-1 (Dunning Decl. ¶¶ 49, 50, 51).)

### 2. Justification for Costs.

In opposing the request for fees, Defendants make several arguments and cite case law applicable to an award of attorneys' fees under 42 U.S.C. § 1988(b), which provides for an award of attorneys' fees to the prevailing party in an action under 42 U.S.C. § 1983. That law is not controlling. Instead, as the Supreme Court noted, a court has the inherent authority to sanction a party for bad faith conduct in litigation but only for attorneys' fee that the innocent party incurred solely because of the misconduct. *Goodyear Tire & Rubber Co. v. Haeger*, __ U.S. __, 137 S.Ct. 1178 (2017). The Court in assessing the fees and costs achieves "rough justice" and is not required to "achieve auditing perfection." *Id*. at 1187 (citing and quoting *Fox v. Vice*, 563 U.S. 826, 836-838 (2011)). The Court "need not be a "green eyeshade accountants" but rather "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id*.

The Supreme Court has also held that a court may assess attorneys' fees both under the doctrine of inherent authority and a particular statute. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). Here, Rule 37(a) applies to a portion of the fees sought. Rule 37(a) provides that a moving party may obtain an award of "reasonable expenses," which include attorneys' fees, incurred in making a motion to compel. Here, Plaintiffs incurred fees to prepare the original motion to compel filed on December 9, 2019, to attend the hearing and conference ordered by the District Court, to meet and confer to prepare the second motion to compel, to prepare the second letter brief, and to attend the second hearing. (Dkt. No. 146-1 (Dunning Decl. ¶¶ 49, 50, 51, 54).) As noted above, the Court granted that motion to compel and ordered production of documents. Plaintiffs are entitled to those fees. But even if Plaintiffs were not entitled to those fees under Rule 37(a), they are entitled to them under the Court's inherent authority.

Plaintiffs incurred costs in deposing witnesses after Defendants provided additional discovery and meeting and conferring with Defendants to determine the scope of production. (Dkt. No. 146-1 (Dunning Decl. ¶¶ 52-53, 55).) Plaintiffs also seek costs for reporting,

16

1    transcription and videographer services.  These fees are justified under the Court's inherent
2    authority, as Plaintiffs were forced to meet and confer with Defendants' counsel and to take these
3    depositions either to learn about Defendants' spoliation – after Defendants had represented that
4    they had produced all relevant, responsive documents, or were forced to take these depositions
5    after Defendants produced additional documents.  Under the *Goodyear* standard, Plaintiffs
6    incurred these fees and costs because of Defendants' misconduct in failing to preserve
7    electronically stored information.  Plaintiffs were forced to re-depose two witnesses after learning
8    of the existence of text messages that Defendants had not produced in the normal course of
9    discovery, and they were force to take two other depositions to learn about the preservation or
10   spoliation of evidence, also after learning of the existence of new evidence.  Plaintiffs would not
11   have incurred the fees but for the actions of the Defendants.

Finally, Plaintiffs incurred fees and costs to write the briefs for the motion for spoliation, attending the hearing, and preparing for the hearing.  (Dkt. No. 146-1 (Dunning Decl. ¶ 58); Dkt. No. 160 (Second Supplemental Dunning Decl. ¶ 3).)  Again, they would not have incurred these fees but for the actions of the Defendants in failing to preserve electronically stored information.

### 3.    Defendants' Objections to Amount of Fees.

Defendants argue that the fees are too high for counsel not experienced in this matter and that Plaintiffs fail to itemize the bills.  However, lead counsel Angela Dunning has significant experiences as plaintiff's counsel in cases of this type under 42 U.S.C. § 1983, and that experience includes litigating at least one case through trial, which resulted in a verdict for Dunning's clients, and other cases through discovery and substantive motions.  (Dkt. No. 158-1 (Supplemental Dunning Decl. ¶¶ 4, 5, 6, 8).)  In addition, Plaintiffs present evidence showing the expertise in litigation in general of the law firm representing Plaintiffs.  (Dkt. No. 146-1 (Dunning Decl. ¶ 5).) Plaintiffs' lawyers are seasoned litigators in general, with decades of experience at a large law firm ranked in the top 50 law firms in the country by *The American Lawyer*.  (Dkt. No. 146-1 (Dunning Decl. ¶ 5).)

Courts have granted attorneys' fees based on the rates proposed by Plaintiffs' counsel in other areas of law.  *See*, *e.g.*, *In re Animation Workers Antitrust Litig.*, 2016 WL 6663005, at *6

(N.D. Cal. Nov. 11, 2016) (finding rates of senior attorneys of between $845 to $1,200 per hour reasonable); *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at *9 (N.D. Cal. June 5, 2017) (finding rates for senior attorneys of between $870 to $1,200 per hour reasonable). At least one court has found that Plaintiffs' counsel's rates are lower than the rates charged by peers. *See*, *e.g.*, *In Gabriel Technology Corp. v. Qualcomm Inc.*, 2013 WL 410103, at *9 (S.D. Cal. Feb. 1, 2013) (after comparing rates published in a public report, the court found that the rates of Plaintiff's counsel "are lower than those charged by comparable firms.")

Some courts have awarded the rates sought by Plaintiffs in this matter in similar types of cases under 42 U.S.C. § 1983. *See*, *e.g.*, *Frias v. City of Los Angeles*, 2020 WL 4001620, at *2-3 (C.D. Cal. Apr. 23, 2020) (awarding fees of $400 to $1,100 and finding that 2018 report of fees found partner's median rate to be $650 per hour with the upper quartile making $908 and associates' median rate to be $510 with the upper quartile to be $670 per hour). In *Frias*, the court awarded the highest rate, $1,100 per hour, for a lawyer considered to be the best in the field of civil rights.

The Court finds that the rate sought by Dunning is justified because of the unusual nature of the case. Here, lawyers with significant experience in commercial litigation were necessary to address the complex issues of electronically stored information. The expertise Plaintiffs' counsel brought to this case from their combined decades of experience in dealing with complex matters of discovery benefitted Plaintiffs here. A lawyer less experienced in discovery of electronically stored information might not have had the tenacity and knowledge to seek the information as Plaintiffs' counsel here had in uncovering the spoliation of evidence.

Moreover, the high fees Plaintiffs seek are offset by the voluntary reduction of fees. As noted above, Plaintiffs seek fees only for a small portion of the work actually done. Plaintiffs also sought to conduct the work in the most cost-effective manner, as the bulk of the work was performed by the lawyer with the lowest billing rate of the three lawyers.[1]

Second, with regard to the sufficiency of the billing records, the Court finds that the

---

[1] Other associates with lower rates worked on this matter, but as stated above, Plaintiffs do not seek to recover any of their fees.

1    detailed breakdown of time spent that is provided in the declarations is sufficient to support the

2    reasonableness of the time spent.  The Ninth Circuit has held that, in the context of an award of

3    attorneys' fees under Rule 37, an award of attorneys' fees may be based on the affidavit of

4    counsel, so long as they are sufficiently detailed to enable the court to consider all the factor

5    necessary in setting the fees.  *Henry v. Gill Industries, Inc.*, 983 F.2d 943, 946 (9th Cir. 1993)

6    (quoting *Williams v. Alioto*, 625 F.3d 845, 849 (9th Cir. 1980) (*per curiam*), *cert. denied*, 450 U.S.

7    1012 (1981).  *Williams* addressed fees in the context of an action under 42 U.S.C. § 1983.  625

8    F.3d at 847.

9    The Court has reviewed the time spent for each task and finds that the amounts of time

10   spent for each task are reasonable, especially considering that Plaintiffs are seeking fees only for

11   the time of one or two attorneys, even if other attorneys and/or a paralegal worked on the matters.

12   Thus, as the court noted in *Henry*, any concern about the sufficiency of documentation is

13   "obviated" by the tremendous discount in fees awarded.  983 F.2d at 946.

14   **4.     Fees Assessed against Defendants.**

15   The last remaining question is whether all Defendants are jointly and severally liable for

16   the fees or whether only specific Defendants are liable for fees.  There is not sufficient information

17   at this time to determine the degree of culpability of each Defendant, but it is clear that Lake

18   County bears the lion's share of blame.  As noted above, Lake County's witnesses testified in

19   deposition that Lake County took no steps to preserve emails until March 9, 2020, long after the

20   administrative claim was filed, long after this suit was filed, and long after the District Court

21   specifically informed Defendants of the need to preserve electronically stored information.

22   However, individual Defendants also bear some blame as well.  Also as discussed above, some of

23   the individual Defendants Martinez, Castellanos,[2] and White testified in deposition that they did

24   not use or could not remember using their cell phones to discuss Lindsay Williams, and those

25   representations were not accurate.  But Lake County also made no real attempts to collect

26   evidence from the individual Defendants' cell phones and instead relied upon them to collect the

---

[2] As described above, Castellanos testified that there was one exception to that statement.

19

evidence.  Given that Lake County took no action to collect evidence from its employees, the undersigned orders that Lake County pay the entire amount of sanctions.  If Lake County chooses, it can move for apportionment of sanctions between and among Defendants, by filing a motion within ten Court days of this Order.

## CONCLUSION

The Court GRANTS the motion for sanctions, RECOMMENDS that the District Court provide the requested adverse inference instruction to the jury, and GRANTS the motion for attorneys' fees in the amount of $121,154.98, to be paid by Defendant Lake County.

**IT IS SO ORDERED**.

Dated: August 17, 2020



SALLIE KIM
United States Magistrate Judge